STATE OF NORTH CAROLINA v. GARY LUNDY HICKS

No. 8222SC519

(Filed 15 February 1983)

**1. Weapons and Firearms § 3— discharging weapon into occupied dwelling—sufficiency of evidence**

In a prosecution for discharging a firearm into occupied property in violation of G.S. 14-34.1, the evidence was sufficient for the jury to find that defendant knew or had reasonable grounds to believe that the house was occupied at the time of the shooting where the evidence tended to show that defendant and the owner of the home lived in a small community; they had known each other since 1973; an accomplice visited the occupant of the home at his house three days before the shooting; and the shooting occurred at 5:00 a.m.

**2. Criminal Law § 117.4— accomplice not given formal immunity—request for accomplice instruction only—no error to fail to instruct on quasi-immunity**

Where a witness had an agreement with the district attorney that if she testified the charges against her would be dropped, the agreement was pursuant to G.S. 15A-1054 and not pursuant to G.S. 15A-1052. G.S. 15A-1054 does not require the trial judge to give an interested witness instruction to the jury, and since defendant requested an accomplice instruction only, the trial judge did not err in only giving that instruction.

ON certiorari by defendant from *Rousseau, Judge.* Judgment entered 10 April 1980 in Superior Court, IREDELL County. Heard in the Court of Appeals 16 November 1982.

Defendant was charged with two counts of discharging a firearm into occupied property, in violation of G.S. 14-34.1. The State's evidence tended to show the following. State Trooper Ward testified that on 16 September 1979 he saw defendant under the hood of a Pontiac which was stopped on the road. Defendant said he could not get it to start and Ward told him to move it onto the shoulder of the road. Then Ward pursued a Buick and arrested the driver, Ronnie Hall, for driving under the influence. When Ward returned to where he had last seen defendant, the Pontiac was sitting in a ditch and the trunk was smashed in. Defendant blamed Ward for the accident and told him that if he had helped get the car off the road the accident would not have occurred. Ward also said that on 19 September 1979 Ronnie Hall visited him at his house and asked him for help when he had to go to court on the DUI charge.

Hall testified that on 22 September 1979 he, defendant, and Barbara Lackey, defendant's girlfriend, were drinking beer together. While they were out drinking they decided to shoot at Ward's house. At 5:00 or 5:30 a.m. they drove to Ward's house with two .22 caliber rifles. They stopped the car about 150 or 200 yards from the house and Hall and defendant each fired twelve to fifteen rounds. Hall saw a dim light in the house, and did not see any cars parked in the driveway. After shooting at Ward's house they drove down the street and defendant shot five or six rounds into a house belonging to James Ray Summers. Then they returned to defendant's trailer, hid the guns, drank more beer, and went to bed.

Jerry Ward, Trooper Ward's son, testified that on the morning of 22 September 1979 he was awakened by the sound of shots. At approximately 9:00 a.m. he went outside and found nineteen or twenty rifle shells.

Trooper Ward testified that he found nineteen bullet holes in his house. He said that on the day the shooting occurred the "rock work" in front of the house was not completed.

Barbara Lackey testified for the State. She essentially corroborated Hall's testimony. She also said defendant hid the guns behind his trailer. She found them and gave them to Officer Redmond. She admitted she told Officer Redmond that she and defendant were in bed at the time of the shooting because defendant asked her to lie. On cross-examination she said the district attorney promised her the charges against her would be dismissed if she testified.

Defendant did not testify. The jury found him guilty of shooting into Ward's house, and not guilty of shooting into Summers' house. He was sentenced to not less than eight nor more than ten years and the court recommended he pay Ward restitution of $500.00. Defendant's appeal was dismissed for failure to comply with the Rules of Appellate Procedure, *State v. Hicks*, No. 8022SC1153, 21 April 1981. A petition for writ of certiorari was allowed by this Court.

*Attorney General Edmisten, by Assistant Attorney General George W. Boylan, for the State.*

*Appellate Defender Adam Stein and Assistant Appellate Defender Malcolm R. Hunter, Jr., for defendant appellant.*

VAUGHN, Chief Judge.

**[1]**   Defendant's first argument is that the trial court erred in denying his motion to dismiss at the close of the State's evidence. Defendant's motion to dismiss requires the trial court to consider all the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference drawn from the evidence. *State v. Stewart,* 292 N.C. 219, 232 S.E. 2d 443 (1977). The question is whether there is substantial evidence, direct, circumstantial, or both, to support a finding that the offense charged has been committed and the accused committed it. *State v. Smith,* 291 N.C. 505, 231 S.E. 2d 663 (1977).

The offense of discharging a firearm into occupied property, G.S. 14-34.1, is defined as follows:

> Any person who willfully or wantonly discharges or attempts to discharge:
>
> > (1) Any barreled weapon capable of discharging shot, bullets, pellets, or other missiles at a muzzle velocity of at least 600 feet per second; or
> >
> > (2) A firearm
>
> into any building, structure, vehicle, aircraft, watercraft, or other conveyance, device, equipment, erection, or enclosure while it is occupied is guilty of a Class H felony.

This statute was explained in *State v. Williams,* 284 N.C. 67, 73, 199 S.E. 2d 409, 412 (1973):

> We hold that a person is guilty of the felony created by G.S. 14-34.1 if he intentionally, without legal justification or excuse, discharges a firearm into *an occupied building* with knowledge that the building is then occupied by one or more persons or when he has reasonable grounds to believe that the building might be occupied by one or more persons. (Emphasis in original.)

Defendant contends that there was insufficient evidence for the jury to find that he knew or had reasonable grounds to believe that Ward's house was occupied at the time of shooting. The evidence, however, viewed in the light most favorable to the State tends to show that defendant and Ward lived in a small community; they had known each other since 1973; Hall visited Ward, at his house, three days before the shooting; and the shooting occurred at 5:00 a.m., a time when people are usually at home. Furthermore, Ward's house had a garage, which explains why no cars were parked in front of his house. Defendant contends that the State offered evidence that the house was "under construction" and thus appeared unoccupied. While it is true that if the State's evidence tends only to exonerate a defendant from a particular charge his motion for nonsuit should be allowed, *State v. Hamby*, 276 N.C. 674, 174 S.E. 2d 385 (1970), *death penalty vacated*, 408 U.S. 937, 33 L.Ed. 2d 754, 92 S.Ct. 2862 (1972), this evidence does not indicate that the house appeared unoccupied. Viewed in the light most favorable to the State, the "rock work" was probably covering the cement block foundation. That it was unfinished did not make the house uninhabitable. Since there was no evidence that the house was otherwise incomplete, the unfinished "rock work" would not indicate the house was unoccupied. Clearly there was substantial evidence to support a finding that the offense was committed, and defendant committed it. Defendant's motion to dismiss was properly denied.

[2] Defendant's second argument is that the trial judge erred by failing to instruct the jury on testimony of a witness with immunity or quasi-immunity as follows:

> There was evidence which tends to show that Barbara Lackey was testifying under an agreement to dismiss the charges against her in exchange for her testimony. If you find that she testified in whole or in part for this reason you should examine her testimony with great care and caution in deciding whether or not to believe it. If, after doing so, you believe her testimony in whole or in part, you should treat what you believe the same as any other believable evidence.

Defendant contends that since Lackey had an agreement with the district attorney that if she testified the charges against her would be dropped, the above instruction was required by G.S.

15A-1052(c). We do not agree for two reasons: the applicable statute does not require the instruction, and at trial defendant requested an *accomplice* instruction, not the above instruction. G.S. 15A-1052 provides, in pertinent part:

> (a) When the testimony or other information is to be presented to a court . . . the order to the witness to testify or produce other information must be issued by a superior court judge. . . .
>
> (c) In a jury trial the judge must inform the jury of the grant of immunity and the order to testify prior to the testimony of the witness under the grant of immunity. During the charge to the jury, the judge must instruct the jury as in the case of interested witnesses.

As the official commentary to G.S. 15A-1051 explains, a formal grant of immunity is not conferred unless the witness is asked an incriminating question, he claims his privilege against self-incrimination, the judge orders him to answer the question, and the witness then answers the question. Clearly, Lackey was not granted formal immunity. Her agreement was pursuant to G.S. 15A-1054, which does not require particular jury instructions. The statute provides:

> (a) Whether or not a grant of immunity is conferred under this Article, a prosecutor, when the interest of justice requires, may exercise his discretion not to try any suspect for offenses believed to have been committed within the judicial district, to agree to charge reductions, or to agree to recommend sentence concessions, upon the understanding or agreement that the suspect will provide truthful testimony in one or more criminal proceedings.
>
> (b) Recommendations as to sentence concessions must be made to the trial judge by the prosecutor in accordance with the provisions of Article 58 of this Chapter, Procedure Relating to Guilty Pleas in Superior Court.
>
> (c) When the prosecutor enters into any arrangement authorized by this section, written notice fully disclosing the terms of the arrangement must be provided to defense counsel, or to the defendant if not represented by counsel, against whom such testimony is to be offered, a

reasonable time prior to any proceeding in which the person with whom the arrangement is made is expected to testify. Upon motion of the defendant or his counsel on grounds of surprise or for other good cause or when the interests of justice require, the court must grant a recess.

The official commentary to G.S. 15A-1054 explains that the statute was enacted, with a notice requirement as a safeguard, because "[T]he Commission thought that formal grants of immunity . . . would probably be few and far between. Several persons described a more informal assurance of lenience or nonprosecution . . . as being more effective and much more prevalent. . . ."

In *State v. Bagby*, 48 N.C. App. 222, 268 S.E. 2d 233 (1980), *review denied*, 301 N.C. 723, 276 S.E. 2d 284 (1981), this Court held that when a witness enters into an arrangement with the prosecutor under G.S. 15A-1054, absent a request from defendant, the trial court need not charge the jury that the witness testified as an accomplice or that the jury closely scrutinize the testimony because the witness testified under an agreement with the district attorney. Thus the statute, G.S. 15A-1054, and *Bagby*, set forth the rule that, absent request, the trial judge need not give an interested witness instruction to the jury. Since defendant requested an accomplice instruction only, the trial judge did not err in only giving that instruction, which was as follows:

> Now, in this case there is evidence that shows that the witness, Ronnie Hall, and the witness, Barbara Lackey, were accomplices in the commission of the crimes charged in this case. . . .

> Now, an accomplice is considered by law to have an interest in the outcome of the case. Since these two witnesses were accomplices, *you should examine every part of their testimony with the greatest care and caution.* If, after doing so, you believe their testimony in whole or in part, you should treat what you believe the same as any other believable evidence. (Emphasis added.)

Furthermore, the jury was fully aware of the agreement between Lackey and the district attorney because it was elicited on cross-examination.

We have carefully reviewed defendant's assignments of error and find no error.

No error.

Judges WELLS and WHICHARD concur.