1999-NMCA-002

972 P.2d 16

**Phillip E. STYKA, Petitioner–Appellant,**

v.

**Jane H. STYKA, Respondent–Appellee.**

**No. 18,543.**

Court of Appeals of New Mexico.

Nov. 19, 1998.

Certiorari Denied, No. 25,504, Jan. 6, 1999.

Kim E. Kaufman, Albuquerque, Barbara V. Johnson, Albuquerque, for Appellant.

David H. Kelsey, Victoria H. Perdue, Atkinson & Kelsey, P.A., Albuquerque, for Appellee.

*OPINION*

APODACA, J.

{1} Petitioner Phillip E. Styka (Father) appeals from the trial court's decree dissolving his marriage to Respondent Jane H. Styka (Mother), dividing the community property, and determining child support. Petitioner raises several issues on appeal involving only the child support determination, which he has argued as six separate issues. We have restructured the issues in a different order and format and consolidated them as three issues and several subissues for purposes of discussion.

{2} The first issue relates to Mother's income. Father argues that the trial court erred in determining Mother's income for purposes of calculating child support, by failing to (1) fully take into account the in-kind benefit that Mother receives from living in a residence for which she pays neither rent nor a mortgage; (2) take into account as other income the annual gift of $10,000 Mother receives from her father and other substantial but irregular gifts or lump sum trust corpus distributions Mother has received during the course of the marriage; (3) impute income to Mother based on a reasonable rate of return on the cash assets Mother received in the divorce proceeding; and (4) impute potential income to Mother based on full-time employment.

{3} The second issue concerns the costs of child care. Father disputes the trial court's determination that his child care expense was erroneous, as well as the court's imputation of child care expenses to Mother.

{4} The third issue involves certain private school expenses. Father contends that the trial court erred in including private school tuition in its calculation of child support.

{5} This appeal presents us with several questions of first impression concerning the meaning of NMSA 1978, § 40-4-11.1 (1995). We affirm the trial court on all issues except the issue of imputation of return on cash assets and income to Mother and the issue of Father's child care costs.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

{6} Father and Mother were married in 1987. They separated on April 9, 1996, and Father filed a petition for dissolution of marriage and custody of the children on the following day. There are two children of the marriage, a son and a daughter. At the time the parents separated, their son was six years old and their daughter was four years old.

{7} Father is an anesthesiologist. Mother holds a degree in pharmacy and is licensed to practice pharmacy in New Mexico. By stipulation, Mother and Father have joint legal custody of their children, with each parent having physical custody of the chil-

dren 50% of the time. As a practical matter, the children spend alternate weeks with each parent. At the time of trial, both children were enrolled at a private school pursuant to an interim stipulation. The son was in first grade and the daughter attended a pre-kindergarten program. During the school year, the children were in school from 8:00 a.m. to 3:15 p.m. However, the parties agreed that this interim order did not resolve the question of whether the children should attend public or private school. Additional facts are included in our discussion of the issues.

## II. DISCUSSION

### A. Standard of Review

■■■■ {8} The setting of child support is within the trial court's discretion and is reviewed on appeal only for an abuse of that discretion. *See Spingola v. Spingola,* 91 N.M. 737, 742, 580 P.2d 958, 963 (1978). The trial court's discretion, however, must be exercised in accordance with the child support guidelines. *See Tedford v. Gregory,* 1998-NMCA-067, ¶¶ 32-33, 125 N.M. 206, 959 P.2d 540 (reversing trial court's deviation from the guidelines because the trial court did not exercise its discretion in the manner required by statute); *Jurado v. Jurado,* 119 N.M. 522, 529-30, 892 P.2d 969, 976-77 (Ct. App.1995) (discussing trial court's exercise of discretion under NMSA 1978, § 40-4-11.2 (1989)). We also review the trial court's findings of fact to determine if there is substantial evidence to support the determinations. *See Alverson v. Harris,* 1997-NMCA-024, ¶ 27, 123 N.M. 153, 935 P.2d 1165. Finally, we review questions of law de novo. *See id.* ¶ 6.

### B. Mother's Income for Purposes of Child Support

{9} Section 40-4-11.1(C)(2) defines gross income in part as follows:

> "gross income" includes income from any source and includes but is not limited to income from salaries, wages, tips, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insur-

ance benefits, significant in-kind benefits that reduce personal living expenses, prizes and alimony or maintenance received[.]

■■ {10} On appeal, Mother essentially contends, as she did at the hearing before the trial court, that gifts are not income. We hold that, at a minimum, the trial court must include in its income determinations the actual cash value of the income sources listed in Section 40-4-11.1(C)(2).

{11} We believe the language of Section 40-4-11.1(C)(2) requires consideration of the actual amount of income from the statutorily listed sources in determination of each parent's gross income. Although we have not directly addressed this issue before, our decisions on these issues have consistently taken this approach. *See Tedford,* 1998-NMCA-067, ¶ 31, 125 N.M. 206, 959 P.2d 540 (findings concerning income should be made before applying any deviation from the guidelines); *Major v. Major,* 1998-NMCA-001, ¶¶ 4-11, 124 N.M. 436, 952 P.2d 37; *Jurado,* 119 N.M. at 529-30, 892 P.2d at 976-77; *Roberts v. Wright,* 117 N.M. 294, 297, 871 P.2d 390, 393 (Ct.App.1994); *Perkins v. Rowson,* 110 N.M. 671, 674, 798 P.2d 1057, 1060 (Ct.App.1990) (dicta).

{12} We turn now to the specific errors or subissues argued by Father under this first issue.

### 1. The Residence

■■ {13} Father argues that the trial court erred in calculating the significant in-kind benefit of Mother's residence under Section 40-4-11.1(C)(2). This section partly defines "gross income" as "significant in-kind benefits that reduce personal living expenses...." We disagree with Father's definition of in-kind benefits and uphold the trial court's ruling on this issue.

{14} At the time of the hearing in the trial court, Mother was living without cost to her in a residence that had been purchased in the name of her father while the divorce was pending. The purchase price of the residence was $325,000. Mother received $100,000 of the purchase price as a gift from

her father. The other $225,000 was paid by the Louis Stefurak Trust. In exchange, Mother gave the Louis Stefurak Trust a promissory note for $225,000 at 6.75% interest. Under the terms of the note, payments would not begin until May 31, 2012. Nothing in Mother's testimony suggests that interest would accumulate on the debt during the years that payments were not being made. Consequently, it was undisputed that Mother would not be required to make any payments on the house until after the parties' children reached the age of majority.

{15} At the hearing, Father asked the trial court to treat the use of the house as an in-kind benefit. He urged the court to calculate its value based on the cost of a 30–year mortgage at 8%. He calculated the monthly payment of this mortgage as $2376. In contrast, Mother asked the trial court to ignore the value of the house entirely. The trial court, without explanation, valued the house at $1000 per month. Father contends that the trial court's determination was not supported by substantial evidence.

{16} We do not believe that the residence is a significant in-kind benefit within the meaning of Section 40–4–11.1(C)(2). Rather, we believe that the term in the statute refers to employment benefits. Because the statute does not define the term and the term does not have a commonly accepted plain meaning, we consider legal commentary and statutory authority in our interpretation. *See State v. Fellhauer,* 1997–NMCA–064, ¶¶ 4–5, 123 N.M. 476, 943 P.2d 123 (stating that court may use interpretative aids in construing statute).

{17} Section 3.12(4)(a) of the American Law Institute's Principles of the Law of Family Dissolution: Analysis and Recommendations (Tentative Draft No. 3, Part II, 1998) captures "in-kind *employee*" or self-employment benefits in calculating a parent's income for purpose of establishing a child support award. (Emphasis added.) A cited example is housing provided by an employer. *See id.* illus. 2. Additionally, Section 3.12(4)(b) generally does not impute income arising from ordinary home ownership where the owner occupies the home. *See id.* cmt. d. (impute income only if home is incommensu-

rate with economic resources of owner due to excessive investment). A statute similar to Section 40–4–11.1(C)(2) refers to "economic in-kind benefits *received by an employed obligor*" in determining gross income for child support obligations. *See* Ga.Code Ann. § 19–6–15(b)(4) (1996) (emphasis added). These references support our construction of in-kind benefits under Section 40–4–11.1(C)(2) as employment benefits.

{18} Mother did not cross appeal the trial court's imputation of income from the house at the rate of $1000 per month. For that reason, that part of the trial court's calculation of the imputed amount shall remain in effect.

## 2. Gifts and Distributions From Trusts

{19} Father testified at trial that, during the nine years of the parties' marriage, Mother received $10,000 each year from her father. Mother did not dispute this, nor did she indicate that these gifts would not be made in the future. There was also evidence in the record that Mother had in the past received additional, substantial gifts from her father as well as substantial lump sum distributions of principal from both the San Hamel Trust and the Louis Stefurak Trust. Based on this evidence, Father asked the trial court to include in Mother's income $25,000 or $2083 per month from all of these sources. Mother argued that the trial court should not consider these funds in determining her income, and the trial court did not do so.

{20} On appeal, Father emphasizes that Section 40–4–11.1(C)(2) indicates that income includes "income from any source" in determining a parent's gross income. Mother, on the other hand, points out that the statute does not list gifts as one of the sources of income to be considered. Mother additionally relies on dicta in this Court's decision in *Monsanto v. Monsanto,* 119 N.M. 678, 682, 894 P.2d 1034, 1038 (Ct.App. 1995). In *Monsanto,* this Court expressed concern that inclusion of these types of income in determining child support might be an abuse of discretion. *See id.* We did not, however, decide the issue in *Monsanto.*

{21} The question of whether the trial court can consider gifts received by a parent as part of a parent's actual gross income is an issue of first impression. In this case, the language of the statute is ambiguous because " 'it can be understood by reasonably well-informed persons in two or more different senses.' " *Alverson*, 1997–NMCA–024, ¶ 8, 123 N.M. 153, 935 P.2d 1165 (quoting *State v. Elmquist*, 114 N.M. 551, 552, 844 P.2d 131, 132 (Ct.App.1992)). We must therefore interpret the statute. In interpreting a statute, we endeavor to determine the intent of the Legislature. *See Archer v. Roadrunner Trucking, Inc.*, 1997–NMSC–003, ¶ 7, 122 N.M. 703, 930 P.2d 1155. In making this determination, we consider the language of the statute, the purpose of the legislation, and the wrongs it was intended to remedy. *See Key v. Chrysler Motors Corp.*, 1996–NMSC–038, 121 N.M. 764, 768–69, 918 P.2d 350, 354–55.

{22} In considering this issue, we have examined the law in other jurisdictions. The courts in other jurisdictions, however, appear to be split on the question. Some jurisdictions do not include regular, substantial gifts in the definition of income, usually on the theory that a gift is a matter of grace rather than legal right. *See Nass v. Seaton*, 904 P.2d 412, 415–16 (Alaska 1995); *Huebscher v. Huebscher*, 206 A.D.2d 295, 614 N.Y.S.2d 524, 525 (App.Div.1994).

{23} Other jurisdictions include regular substantial gifts to a parent in calculating that parent's income. These jurisdictions take the view that child support should be based on all the resources available to the parent to raise the child. *See, e.g., Cummings v. Cummings*, 182 Ariz. 383, 897 P.2d 685, 687–88 (Ariz.Ct.App.1994); *Barnier v. Wells*, 476 N.W.2d 795, 797 (Minn.Ct.App. 1991).

{24} In deciding this issue, we look to the language of Section 40-4-11.1. The wording of our statute is more analogous to those in jurisdictions that have not generally included gifts as income. *Compare, e.g., In re Marriage of Harmon*, 210 Ill.App.3d 92, 154 Ill.Dec. 727, 568 N.E.2d 948, 950 (Ill.App. Ct.1991) (holding that gifts are not income where statute provided that "net income is the total of all income from all sources") *with Cummings*, 897 P.2d at 687–88 (holding that gross income includes gifts where child support guidelines included gifts in definition of gross income). Consequently, we hold that gross income generally does not include gifts under Section 40-4-11.1(C)(2).

{25} Our Legislature, however, specifically authorized the court to deviate from the child support guidelines. *See* § 40-4-11.1(A). This deviation could include the calculation of periodic, dependable gifts in gross income. *See Triggs v. Triggs*, 920 P.2d 653, 660 (Wyo.1996) (holding that court has discretion in including gifts in income where statute did not specifically include gifts as income but permitted deviation from child support calculations). Father, however, did not make this argument to the trial court below or to us on appeal. As a result, we do not believe that the trial court abused its discretion in excluding the gifts from Mother's gross income.

### 3. Reasonable Rate of Return on Mother's Cash Assets Received in the Divorce

{26} We recognize that the division of community property after divorce should not be treated as a sale of property. *See Leeder v. Leeder*, 118 N.M. 603, 609, 884 P.2d 494, 500 (Ct.App.1994). Interest earned on assets received in a property distribution, however, is income for purposes of child support. *See id.* Additionally, this Court has previously held that the determination of a parent's income for child support purposes should include the income potential of idle assets. *See Talley v. Talley*, 115 N.M. 89, 91, 847 P.2d 323, 325 (Ct.App.1993).

{27} The evidence on this issue was as follows. After they separated, the parties sold the marital residence. $327,000 of the proceeds was deposited in an escrow account pending the distribution of the marital property. Eventually the parties stipulated to the division of the community property. At trial, Father introduced evidence that Mother received $303,180 in cash assets in the divorce. Father asked the trial court to impute income to Mother equal to what she

would receive by conservatively investing her cash assets. He also testified that long-term federal bonds were such an investment and that the rate of return on that investment was 6.88% at time of trial. According to Father, the trial court should have considered Mother to have income from investing her cash assets in the amount of $1738.25 per month.

{28} Mother, on the other hand, testified that at the time of trial she had not yet decided whether or not she would invest her cash assets. She did not dispute the amount of the cash assets she received in the divorce. Mother argued that the trial court should impute income to each parent based on the interest and dividends that the parties had received in 1995.

{29} As we previously noted, the trial court is required to include income from idle assets in determining a parent's gross income. *See Talley,* 115 N.M. at 91, 847 P.2d at 325. As a matter of law, therefore, Mother's professed indecision concerning investment is not relevant. What is important is the income Mother could receive by investing these otherwise idle assets. The evidence before the trial court indicated that Mother's cash assets could be conservatively invested and earn 6.88%. Mother did not challenge the amount of her cash assets nor did she submit evidence that would support a different rate of return.

{30} Mother argues that Father's position was based on speculation and that it was rational for the trial court to reject his position and make a decision based on past history. *See Sosa v. Empire Roofing Co.,* 110 N.M. 614, 616, 798 P.2d 215, 217 (Ct.App. 1990) (when trial court finds against the party with the burden of proof on an issue, the question on appeal is whether it was rational for the trial court to do so). We disagree. We do not believe the trial court could rationally reject timely evidence in favor of historical evidence based on a vastly different scenario existing in the past. *See id.* We thus hold that substantial evidence did not support the trial court's determination that Mother's income from interest and dividends would be $725 per month. The trial court should have imputed to Mother interest income from idle assets in the amount of $1738.25 per month.

### 4. Imputation of Income to Mother

{31} Section 40–4–11.1(C)(1) defines income in part as follows:

"income" means actual gross income of a parent if employed to full capacity or potential income if unemployed or underemployed. *Income need not be imputed to the primary custodial parent actively caring for a child of the parties who is under the age of six or disabled. If income is imputed, a reasonable child care expense may be imputed.* The gross income of a parent means only the income and earnings of that parent and not the income of subsequent spouses, notwithstanding the community nature of both incomes after remarriage.... (Emphasis added.)

{32} The facts relating to this issue were not in dispute below. Mother has a degree in pharmacy and is licensed to practice pharmacy in New Mexico. She has earned $26 per hour when working as a pharmacist. If Mother worked a forty-hour week, Mother's income from this employment would be $54,000 a year or $4507 per month.

{33} Mother worked part-time during the marriage and cut back her hours of work each time one of the children was born. She continued to work at least one day a week until after the parties separated. In December 1996, while the divorce was pending, Mother stopped working. At the time of trial in the spring of 1997, Mother was still not working and was not looking for work. She testified that she did not have any physical or other condition that would limit her ability to be employed. She testified, however, that the divorce deeply affected the children. Mother testified that it was important for her to be able to personally take them to and pick them up from school. She also expressed concern that she might not be able to find a job fitting into her schedule. We note that, since Mother had not tried to find a job, this is little more than speculation on her part.

{34} At trial, Father took the position that Mother was voluntarily unemployed.

Consequently, Father argued, the trial court should impute to her full-time employment income at $26 per hour or $4507 per month. Mother asked the trial court to impute income to her for eight hours of work a week, or $912 per month. The trial court imputed to Mother $2253 based on half-time rather than full-time employment.

{35} On appeal, Father argues that the statute creates a rebuttable presumption of full-time employment. Father thus contends that the trial court misinterpreted the law or misapplied the law to the facts of the case. Mother argues that, because she did not work full-time during the marriage, imputation of part-time income is appropriate. She relies on a report on the child support guidelines stating "[t]he compensation for the last full-time employment of the unemployed or underemployed parent generally is considered to be that parent's potential or full capacity income." 1994 Child Support Guidelines Rev. Commission, St. of N.M., Final Rep. (Report).

{36} We take note that the parents' daughter is no longer under the age of six. Consequently, the trial court may not refrain from imputation of income from full-time employment under Section 40–4–11 .1(C)(1). Mother's cited portion of the Report does not contradict our holding. The trial court should have imputed income from full-time employment to Mother. This imputation should begin no later than when the children started school in the fall. We remand this matter to the trial court for a redetermination of that imputation.

**C. Child Care**

 {37} The child support guidelines set forth in Section 40–4–11.1 deal specifically with the issue of child care. The pertinent portion of the statute reads as follows:

The cost of providing medical and dental insurance for the children of the parties and the net reasonable child-care costs incurred on behalf of these children due to employment or job search of either parent shall be paid by each parent in proportion to his income, in addition to the basic obligation.

Section 40–4–11.1(H). The word "shall" in a statute is mandatory. *See Montano v. Los Alamos County,* 1996–NMCA–108, ¶ 5, 122 N.M. 454, 926 P.2d 307. Consequently, we hold that the trial court is required to include child-care costs in its computations. Additionally, the instructions for the worksheets indicate that the actual cost paid by each parent is to be included on the worksheet. *See* § 40–4–11.1(K) (Basic Visitation, Instruction for Worksheet A, Line 6, and Shared Responsibility, Instructions for Worksheet B, Line 13.)

 {38} On appeal, Father argues the statute creates a rebuttable presumption that what a parent is actually paying for child care is reasonable. He testified that his normal work schedule was from 6:00 a.m. to some time between 4:30 and 6:30 p.m. He was also sometimes required to be on call in the evenings when he had custody of the children. When on call, Father was required to be at the hospital within 20 minutes of the time he received the call. In an effort to provide quality care for the children during these nonstandard hours, Father hired a nanny. The nanny was required to be at Father's house at 6:00 a.m. During the school year, she helped the children get ready for school and dropped them off at school. After school, she picked the children up, brought them home to Father's house and got them started on their homework. In the summer, the nanny stayed with the children from the time Father left in the morning to the time he returned in the evenings. When Father was on call while the children were staying with him, the nanny would spend the night at Father's house. Father testified that he paid the nanny $1000 per four-week month. At the request of the nanny, the amount was paid by a weekly check for $250. The amount did not increase when the children were not in school. Father testified that, according to the nanny's agency, a full-time wage for a nanny is $1200 to $1500 per month.

{39} Mother's argument to the trial court was that Father was paying the nanny for weeks that she did not work and therefore the trial court ought to cut his expense in half. The trial court only allowed Father

$500 per month in child care expense. Mother also testified that, if the court imputed income to her, it should impute to her a proportional amount for child care. The trial court determined that Father's child care expense was $500 per month and imputed to Mother $250 per month for child care.

{40} Mother did not provide any evidence concerning the cost of alternative arrangements to provide quality child care during the hours that Father needed care. Instead, her argument misstated the evidence by characterizing Father as paying for weeks during which the nanny was unnecessary. As we understand the evidence, Father was paying $500 per week for child care during two weeks per month, with the amount paid out at $250 per week throughout the month. The statute requires that the trial court include the actual cost of child care to the working parent. Mother did not provide the trial court with any evidence from which it could determine that Father could actually obtain child care for less. The basis for the trial court's decision regarding Father's child care costs is unclear. Consequently, we remand for an explanation or recalculation of Father's child care expenses. The trial court may have erroneously based its decision on the improper premise that Father paid for unnecessary weeks of child care.

{41} Father also argues that the trial court erred in imputing to Mother $250 per week for child care. Section 40–4–11.1(C)(1) gives the trial court discretion to impute a reasonable child care expense to a party to whom the trial court imputes income. However, we have already held that the trial court should have imputed full-time employment income to Mother. Thus, we believe the trial court will want to reconsider the amount to be imputed to Mother for day care. We do note, however, that the statute emphasizes the actual cost of child care. Mother did not present any evidence on which the trial court could have determined the actual cost of child care if Mother became employed. On remand, the trial court may allow Mother to submit additional evidence concerning what she would actually pay for child care if she was working full time.

## D. Costs of Private School

{42} Section 40–4–11.1(I) provides in part as follows:

> The child support may also include the payment of the following expenses not covered by the basic child support obligation:
>
> . . . .
>
> (2) any extraordinary educational expenses for the children of the parties. . . .

The use of the word "may" indicates that the decision on the issue is discretionary with the trial court. *See Montano,* 1996–NMCA–108, ¶ 5, 122 N.M. 454, 926 P.2d 307.

{43} The evidence developed at trial was as follows. Father testified that he never agreed that the children should attend private school. He stated the parties disagreed on this question during the marriage. Father thought it was better for the children to attend the local public school where they would meet the neighborhood children. He explicitly indicated he did not want the children "socialized in a system where they're just exposed to other doctor's, businessmen and lawyer's children. And not the real world."

{44} Mother testified that the issue did not arise until the parties had separated. She testified that she thought private school was better for the children because she had observed the teachers and was very impressed by them. Mother also testified that she thought the public schools did not offer music and art programs or the use of computers. Father testified that he had investigated the local public school in the parties' district. He stated that the school offered access to computer time, as well as physical education, music, Spanish, and art. The private school tuition had always been paid by Mother's father. The parties, however, agreed that Mother's father stated he would not continue to pay the tuition.

{45} In his closing argument, Father's trial counsel indicated that Father did not want to remove the children from the private school immediately. Instead, his position was that the children should begin schooling in the public schools in the fall. He also argued that the trial court should not include

the cost of private school in the child support calculations. Mother argued that the trial court should continue the status quo and that the cost should be included in the child support calculations. The trial court determined that the children should attend private school.

{46} Father presently argues that the trial court should not have included the private schooling costs simply because one parent prefers private school and the parties can afford it. In support of this contention, he relies on cases from other jurisdictions. Mother relies on *Spingola*, 91 N.M. at 744, 580 P.2d at 965, which indicates that the finest education the parents can reasonably afford should be the criterion.

{47} We determine there was no abuse of discretion in the trial court's decision on this issue. Consequently, we uphold the trial court's inclusion of private school tuition in the calculation of child support.

## III. CONCLUSION

{48} We affirm the trial court's imputation of income from Mother's residence, the court's exclusion of gifts from Mother's income, and the court's inclusion of private school tuition in the child support award. We reverse and remand on the issues of imputation of income to Mother based on a reasonable rate of return on the cash assets received in the divorce and imputation of Mother's employment income. The trial court should impute a reasonable rate of return and full-time income to Mother. Additionally, the trial court should reconsider Mother's child care costs. We also reverse and remand the issue of Father's child care costs. On this issue, if the trial court erroneously based its computation of Father's child care costs on alleged unnecessary weeks, the trial court should recalculate its determination. Otherwise, the trial court should clarify its calculation.

{49} **IT IS SO ORDERED.**

HARTZ, C.J. and WECHSLER, J., concur.