830 P.2d 158

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Larry HIGHFIELD, Defendant–
Appellant.**

No. 12868.

Court of Appeals of New Mexico.

Feb. 17, 1992.

Certiorari Denied April 8, 1992.

Sammy J. Quintana, Chief Public Defender, Gina Maestas, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

PICKARD, Judge.

■ Defendant appeals his convictions for assault with intent to commit a violent felony—to wit, murder—in violation of NMSA 1978, Section 30–3–3 (Repl.Pamp.1984), and shooting at an inhabited dwelling in violation of NMSA 1978, Section 30–3–8 (Cum.Supp.1991). He raises five issues on appeal: (1) whether he was convicted of a nonexistent crime, (2) whether the two convictions merge, (3) whether there was sufficient evidence to support his conviction for assault with intent to commit murder, (4) whether he was denied effective assistance of counsel, and (5) whether the jury should have been instructed on a lesser included offense. Issues listed in the docketing statement but not briefed on appeal are deemed abandoned. *State v. Fish*, 102 N.M. 775, 701 P.2d 374 (Ct.App.1985). We affirm.

The victim, Pamela Lovelace, was defendant's ex-wife. She testified that she spent the night of February 17, 1990, at a mobile home owned by her father. She stated that she was awakened in the early hours of February 18 by crashing noises and thuds. Someone had shot at the trailer. When she looked out the bedroom window, she saw a pickup truck that resembled defendant's. Other evidence corroborated that defendant did the shooting. Pamela stated that there were six holes on the outside of the trailer, toward the west end and around the living room/kitchen area. Inside, there were holes in the refrigerator, the sink, the dishwasher, a chair, and a flour canister.

Pamela's current husband (Carl) and his stepson also testified about the shooting. They were both staying in the trailer that night. In fact, Carl had been living in the trailer for several months. He had been occupying the west-end bedroom, since Pamela's father was still in the trailer and occupying the east-end bedroom. However, several days before the shooting, Carl

Tom Udall, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

moved into the east-end bedroom, since Pamela's father had moved out of the trailer. Carl and Pamela were sleeping in the east-end bedroom the night of the shooting.

Defendant contends that no crime exists for assault with intent to commit an unintentional murder. That may be true. *See State v. Johnson*, 103 N.M. 364, 707 P.2d 1174 (Ct.App.1985). Here, however, defendant was convicted of assault with the intent to commit intentional murder.

█ The jury was instructed that in order to find defendant guilty, it had to find that defendant intended to kill Pamela. The jury was also instructed on the elements of second degree murder, and on general-criminal intent in accordance with SCRA 1986, 14–141, which required the jury to find that defendant acted intentionally when he committed the crimes. In combination, these instructions required the jury to determine that defendant acted with the intent to kill. We recognize that the second degree murder instruction, which was given in this case, does not specifically include language on intent to kill. At most, this omission may have created some confusion in the instructions. In order to be preserved for review, however, the claim that instructions are conflicting or confusing must be raised at trial. *State v. Tucker*, 86 N.M. 553, 525 P.2d 913 (Ct. App.1974), *overruled on other grounds by State v. Gonzales*, 86 N.M. 556, 525 P.2d 916 (Ct.App.1974). We note that trial counsel did not object to the instructions on this basis. Contrary to defendant's arguments, he was not convicted of assault with the intent to commit an unintentional murder, and his issue therefore fails.

█ Defendant claims that the offense of assault with intent to commit a felony (murder) and the offense of shooting at an inhabited dwelling merge. This issue must be analyzed under the two-part test of *Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991); *see also State v. Gonzales*, 113 N.M. 221, 824 P.2d 1023 (1992). The state concedes that the conduct in this case, spraying bullets at the trailer in which defendant knew his ex-wife was staying, is the same conduct used to support the con-

victions for both crimes. We must then consider whether the legislature intended multiple punishment for this unitary conduct. If the elements of the two crimes are not subsumed one within the other, as they are not in this case, then a presumption is raised that the legislature intended multiple punishment. Defendant argues that the presumption is rebutted by his argument that the legislature intended the two crimes to address the same social evil and, therefore, did not intend multiple punishment for both.

We cannot agree with defendant's argument. When examining the social evils being addressed by the legislature, this court must define those social evils narrowly. *See Swafford*, 112 N.M. at 15, 810 P.2d at 1235. Defendant's argument that both punishments are addressed to bodily integrity is too broad. Our analysis is governed by the recent holding of the New Mexico Supreme Court in *Gonzales*. In that case, the supreme court applied the tests enunciated in *Swafford* and determined that separate convictions and sentences for unitary conduct violating the statutes prohibiting shooting into an occupied motor vehicle and first degree murder did not violate double jeopardy. *Gonzales*, 113 N.M. at 223–25, 824 P.2d at 1025–27. The court held that there was no merger because the murder statute is designed to avoid the unlawful killing of people, while the statute prohibiting shooting into an occupied vehicle is more narrowly aimed at protecting the public "from reckless shooting into a vehicle and the possible property damage and bodily injury that may result." *Id.* at 225, 824 P.2d at 1027.

In light of *Gonzales*, a similar conclusion must be drawn in this case. In enacting Section 30–3–8, we believe the legislature was concerned with conduct typically designed to terrorize or intimidate. Whether or not the dwelling is actually occupied at the time of the shooting does not matter. On the other hand, Section 30–3–3 is directed toward conduct which is motivated by an intention to effect another's death. We hold that the two statutes are directed toward the protection of different social

norms and indicate an intention on the part of the legislature to allow for multiple punishment for the same conduct.

■ For the same reasons, defendant's argument that he should have been prosecuted only under the more specific statute also fails. The rule on which defendant relies does not apply unless the statutes condemn the same offense. *See State v. Riley*, 82 N.M. 235, 478 P.2d 563 (Ct.App. 1970). Because the elements of Sections 30-3-3 and 30-3-8 are different, they do not condemn the same offense.

■ Defendant argues that there was insufficient evidence to support his conviction for assault with intent to commit a felony (murder). In determining the sufficiency of the evidence, this court views the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict. *State v. Sutphin*, 107 N.M. 126, 753 P.2d 1314 (1988). This court must determine whether there is substantial evidence, of a direct or circumstantial nature, to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to the conviction. *Id.* Substantial evidence is evidence acceptable to a reasonable mind as adequate support for a conclusion. *State v. Sparks*, 102 N.M. 317, 694 P.2d 1382 (Ct.App.1985).

■ Assault with intent to commit a violent felony (murder) is defined as "[a] person assaulting another with intent to kill or commit any murder." § 30-3-3. An essential element of the crime is the intent to murder such person, *see Territory v. Baca*, 11 N.M. 559, 71 P. 460 (1903), and that is how the jury was instructed in this case. We believe that the evidence adduced was sufficient to allow the jury to infer an intent to kill.

About one month prior to the shooting, defendant threatened to fire shots into the mobile home where Pamela and Carl slept. Pamela testified that Carl moved into the trailer in November or December 1989, when it—and particularly the east-end bedroom—was occupied by her father. Defen-

dant knew that Carl had moved into the trailer. The only other bedroom in the home was the west-end bedroom. Carl stated that he had been occupying the west-end bedroom but had moved into the east-end bedroom several days before the shooting, since Pamela's father had moved out of the trailer. Because of the move, Carl and Pamela were sleeping in the east-end bedroom, rather than the west-end bedroom, on the night of the shooting.

Defendant argues that, since there was no evidence to show knowledge on his part that Pamela would be in the west-end bedroom or the living room, there was insufficient evidence to support assault with intent to murder. We cannot agree. There was evidence that defendant knew that Pamela's father occupied the east-end bedroom. There was also evidence that defendant knew that Carl had moved into the trailer and was living there at the same time that Pamela's father was there. The jury could reasonably infer that defendant assumed that the west-end bedroom was being occupied by Carl, and that Pamela would be with Carl. There was also evidence that defendant shot into the living room area. Pamela testified that most of the time when she stayed at the trailer she slept in the living room on the couch. This evidence of shooting into the two rooms where defendant thought it would be likely that Pamela slept is sufficient to sustain the jury's verdict for assault with intent to kill Pamela.

■ Defendant argues that he was denied effective assistance of counsel because counsel argued in closing argument that, at most, he was guilty of shooting at the trailer, and because counsel did not move to dismiss count I, the assault count. The standard for ineffective assistance of counsel is whether defense counsel exercised the skill, judgment, and diligence of a reasonably competent defense counsel. *State v. Crislip*, 109 N.M. 351, 785 P.2d 262 (Ct.App.1989). To show ineffective assistance of counsel, defendant must prove incompetence of counsel and that the incompetence prejudiced him. *State v. Talley*, 103 N.M. 33, 702 P.2d 353 (Ct.App.

1985). This court does not second-guess the tactics and strategy of trial counsel. *State v. Dean,* 105 N.M. 5, 727 P.2d 944 (Ct.App.1986).

During her closing argument, defense counsel argued to the jury that, based on the evidence it had heard, defendant was guilty only of the less serious offense of shooting into an inhabited dwelling. She argued that there was simply no evidence to indicate that defendant was guilty of the more serious crime. When defendant complained to the trial court about this argument after trial, defense counsel explained that the argument was a tactical decision. Because defendant chose not to testify on his own behalf, because there were no other witnesses available that could support defendant's claim that all the other witnesses were lying, and because the evidence was strong on the charge of shooting into an inhabited dwelling, counsel was left with no other alternative but to argue to the jury that it should only find defendant guilty of the less serious offense.

We agree that, under the circumstances, counsel's argument to the jury was a matter of tactics. We believe that counsel was acting competently in trying to convince the jury to convict on the lesser charge and not the greater charge. We cannot say that defendant was afforded ineffective assistance of counsel based on this tactical decision.

Defendant also argues that counsel was ineffective in failing to move to dismiss count I. This argument is based on the fact that the state and defense counsel agreed that the convictions should merge for sentencing purposes. There was no agreement, however, that the crimes merged for the purpose of obtaining convictions. There was no basis for dismissal of count I. Therefore, counsel was not ineffective for failing to make such a motion. *See State v. Stenz,* 109 N.M. 536, 787 P.2d 455 (Ct.App.1990) (counsel is not ineffective for failing to make a motion for which there is no legal or factual basis).

Finally, defendant argues, pursuant to *State v. Franklin,* 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer,* 103 N.M. 655, 712 P.2d 1 (Ct.App.1985), that the jury should have been instructed on the alleged lesser included offense of negligent use of a firearm. The trial court did not err by failing to give the instruction on negligent use of a firearm because it is not a lesser included offense of shooting into an occupied dwelling. A lesser included offense is one which must necessarily be committed when committing the greater offense. *State v. Alderete,* 91 N.M. 373, 574 P.2d 592 (Ct.App.1977). Defendant's requested jury instruction, defining his lesser included offense, required the jury to find that defendant discharged a firearm, knowing he was endangering a person. This crime would not necessarily have been committed when defendant shot into an inhabited dwelling, which by definition does not have to be occupied by a person at the time of the shooting. § 30-3-8.

Defendant's convictions are affirmed.

IT IS SO ORDERED.

ALARID, C.J., and FLORES, J., concur.