IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMSC-013

Filing Date: May 7, 2012

Docket No. 31,934

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

ANGEL ARRENDONDO,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY
Camille Martinez-Olguin, District Judge

Jacqueline L. Cooper, Chief Appellate Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Gary K. King, Attorney General
Ralph E. Trujillo, Assistant Attorney General
Santa Fe, NM

for Appellee

OPINION

CHÁVEZ, Justice.

{1}     Defendant Angel Arrendondo testified during his trial that he shot and killed Alfego "Ace" Aragon in self-defense. Arrendondo claimed that Aragon shot at him numerous times, wounding him once in the shoulder. Witnesses Gloria Rael and Emilio Quintana, Aragon's wife and son-in-law, respectively, testified that Aragon did not own a gun and was not armed. They testified that they both saw Arrendondo shooting into their house. Emilio testified that he saw Arrendondo shoot Aragon in the stomach, and then walk up to Aragon and shoot him a second time in the head, fatally wounding him. The jury found Arrendondo

1

guilty of first-degree murder, assault with intent to commit a violent felony, negligent child abuse, tampering with evidence, and shooting at a dwelling.

{2}     Arrendondo appeals his convictions, raising several issues, which we discuss in four categories.  First, did the trial court abuse its discretion by (a) denying Arrendondo a fifth continuance, which was requested one week before trial to allow defense counsel an opportunity to examine an unidentified hard fragment found in the lining of the jacket Arrendondo wore on the day of the shooting, and (b) by declining to admit the fragment into evidence?  Second, was there sufficient evidence to prove Arrendondo's convictions for assault with intent to commit a violent felony against Nicole Rael, Aragon's daughter; negligent child abuse; tampering with evidence; and shooting at a dwelling?  Third, was defense counsel ineffective because (a) she failed to timely investigate the unidentified hard fragment in the jacket, and (b) she did not pursue a defense that Arrendondo was so intoxicated by heroin use that he could not form the specific intent to commit first-degree murder?  Fourth and finally, was Arrendondo denied his right to a speedy trial under the Sixth Amendment of the United States Constitution, a claim he raises for the first time on appeal?

I.      **THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING ARRENDONDO'S FIFTH MOTION FOR A CONTINUANCE AND REFUSING TO ADMIT THE UNIDENTIFIED FRAGMENT INTO EVIDENCE.**

        A.      **The Trial Court Reasonably Denied the Motion for a Continuance Because of the Number of Previous Continuances, the Likely Length of Delay, and the Lack of an Explanation for Defense Counsel's Failure to Timely Discover and Test the Jacket Evidence.**

{3}     A week before trial, it came to defense counsel's attention that the State was in possession of a Nike jacket that Arrendondo had been wearing on the day of the murder. Lodged in a hole in the back shoulder of the jacket was a small unidentified lump of hard material that has been described during the trial as, among other things, a "fragment," a "hard lump," and a "fragment of something hard, a bullet, a rock, we don't know."  (For the sake of convenience, we will describe the object found in the jacket as an "unidentified fragment" throughout this opinion.)  Defense counsel moved for a continuance of the trial setting to test the jacket and the unidentified fragment in an attempt to bolster Arrendondo's claim of self-defense.  This motion was argued on the morning of trial after a jury had been seated.  The trial court denied the motion, citing the numerous prior continuances granted at Arrendondo's request, and also because the trial judge was not persuaded that the unidentified fragment was relevant to the defense.

{4}     We review a trial court's denial of a motion for a continuance under an abuse of discretion standard.  *See State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135.  An abuse of discretion is a ruling that is "clearly against the logic and effect of the facts

and circumstances of the case." *State v. Moreland*, 2008-NMSC-031, ¶ 9, 144 N.M. 192, 185 P.3d 363 (internal quotation marks and citation omitted). The factors we consider when reviewing the denial of a motion for continuance include

> the length of the requested delay, the likelihood that a delay would accomplish the movant's objectives, the existence of previous continuances in the same matter, the degree of inconvenience to the parties and the court, the legitimacy of the motives in requesting the delay, the fault of the movant in causing a need for the delay, and the prejudice to the movant in denying the motion.

*State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20.

**{5}**     Assessing the trial court's decision under the *Torres* factors, we conclude that the court did not abuse its discretion. The trial court had already continued four trial settings at Arrendondo's request. Each continuance resulted in several intervening months before the next trial setting. In addition, Arrendondo's counsel did not offer any explanation regarding why the jacket and the unidentified fragment had not been discovered sooner or tested before the day of trial.

**{6}**     Finally, as an alternative to the continuance, defense counsel asked that the jacket be admitted into evidence and Arrendondo be permitted to argue that the hole in the jacket corroborated his testimony that Aragon shot him in the shoulder. The trial court admitted the jacket into evidence and defense counsel argued that the hole in the jacket supported Arrendondo's claim that he shot and killed Aragon in self-defense. In light of these considerations, we affirm the trial court's denial of the motion for a continuance.

> **B.     The Trial Court Acted Reasonably in Refusing to Admit the Unidentified Fragment into Evidence Because Arrendondo Failed to Provide Evidence that It Might Have Been a Bullet.**

**{7}**     After defense counsel examined the jacket and discovered the unidentified fragment lodged within it, counsel moved to admit both the jacket and the unidentified fragment into evidence. The trial court admitted the jacket but excluded the unidentified fragment, reasoning that an insufficient foundation had been laid to identify the unidentified fragment and how it might be relevant. Arrendondo argues that the trial court abused its discretion in failing to admit the unidentified fragment that was found in the jacket into evidence because it supported his self-defense claim. Arrendondo reasons that the fact that an unidentified fragment that could have been metal was found in the jacket that he wore on the day of the shooting is evidence that he was shot by Aragon during a gun fight.

**{8}**     This Court reviews a trial court's decision whether to admit or deny objects into evidence for abuse of discretion. *State v. Armendariz*, 2006-NMSC-036, ¶ 6, 140 N.M. 182, 141 P.3d 526. The defendant must show that there is a reasonable possibility that the failure

to admit the evidence contributed to his conviction. *State v. Garcia*, 100 N.M. 120, 123, 666 P.2d 1267, 1270 (Ct. App. 1983).

**{9}** We conclude that the trial court reasonably denied admission of the unidentified fragment into evidence because Arrendondo did not lay a foundation for its admissibility. Foundation goes to conditional relevancy. Under Rule 11-901(A) NMRA, "The requirement of authentication . . . as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Absent authenticating evidence, a trial court may reasonably conclude that the evidence in question is not relevant. *See State v. Kenny*, 112 N.M. 642, 650, 818 P.2d 420, 428 (Ct. App. 1991). Because Arrendondo did not present any evidence to authenticate the unidentified fragment, the trial court reasonably concluded that Arrendondo did not show how the unidentified fragment would be relevant to his self-defense claim. Thus, we affirm the trial court's exclusion of the unidentified fragment.

## II.    SUFFICIENCY OF THE EVIDENCE CLAIMS

**{10}** Arrendondo argues that the following convictions were not supported by sufficient evidence: assault with intent to commit a violent felony against Nicole, negligent child abuse of Jasmine Q. and Adrian A., tampering with evidence, and shooting at a dwelling. In reviewing for sufficiency of the evidence, this Court views the evidence in the light most favorable to the verdict. *State v. Cabezuela*, 2011-NMSC-041, ¶ 42, 150 N.M. 654, 265 P.3d 705. We must assess "whether substantial evidence of either a direct or circumstantial nature exists to support [the] verdict." *Id.* (internal quotation marks and citation omitted). Substantial evidence is evidence acceptable to a reasonable mind as adequate to support a conclusion. *State v. Mailman*, 2010-NMSC-036, ¶ 24, 148 N.M. 702, 242 P.3d 269.

### A.    Sufficient Evidence Supports Arrendondo's Conviction for Assault with Intent to Commit a Violent Felony Against Nicole as Instructed; However, the Jury Instruction was Erroneous.

**{11}** The State presented eyewitness testimony that Arrendondo fired shots into a house occupied by Nicole and others. However, Arrendondo contends that the State failed to present evidence that he "knew that Nicole was in the house, let alone had any sort of disagreement with her so to desire to maim or kill her" or that Nicole subjectively feared being hit by a bullet. Therefore, Arrendondo argues that the conviction is not supported by sufficient evidence. To support a conviction for assault with intent to commit a felony against Nicole, the State had to prove beyond a reasonable doubt that (1) Arrendondo shot a firearm into the house in which Nicole resided; (2) Arrendondo's conduct caused Nicole to believe that he was about to intrude on her bodily integrity or personal safety by touching or applying force to her in a rude, insolent or angry manner; (3) a reasonable person in the same circumstances as Nicole would have had the same belief; (4) Arrendondo's act was unlawful [because it was not justified by self-defense]; (5) Arrendondo intended to kill Nicole or commit murder on Nicole; and (6) this happened in New Mexico on or about

4

November 22, 2003. *See* UJI 14-312 NMRA; NMSA 1978, § 30-3-3 (1963).

**{12}** Police Chief Jerry Stevens, Sergeant Shane Arthur, and Katerina Babcock, a forensic scientist, testified that all of the bullets from the crime scene, including those that landed in the house, came from Arrendondo's 9 mm handgun. Gloria testified that Nicole was in the house during the shooting. This testimony supports a jury finding that Arrendondo shot into the house in which Nicole resided. In addition, Sergeant Arthur testified that the trajectory of the bullets that landed in the house indicates that the shooter was aiming directly at the house. This testimony supports the fourth element: that Arrendondo acted unlawfully, rather than in self-defense. There is no dispute regarding the date of these events.

**{13}** The next question is whether there is sufficient evidence to support a finding that Nicole subjectively believed she would be assaulted and whether that belief was objectively reasonable. The jury was instructed, in pertinent part, that the State had to prove both that "[t]he defendant's conduct caused [the victim] to believe the defendant was about to intrude on [the victim's] bodily integrity or personal safety by touching or applying force to [the victim] in a rude, insolent or angry manner," and that "[a] reasonable person in the same circumstances as [the victim] would have had the same belief." UJI 14-312(2) & (3).

**{14}** The requirement that the victim must *actually believe*, and that a *reasonable person* in the victim's circumstances also *would believe*, that he or she was about to be assaulted indicates a dual subjective and objective test. We have previously contrasted a subjective standard with the objective reasonable person standard based on a person's actual perceptions. *See State v. Rudolfo*, 2008-NMSC-036, ¶ 17, 144 N.M. 305, 187 P.3d 170 (interpreting a focus on the person's actual perception as subjective and deeming an "acted reasonably" requirement as objective). Therefore, the State's evidence must satisfy both a subjective and an objective standard.

**{15}** Our law of assault generally requires evidence that the victim actually, subjectively comprehended that he or she was going to receive unwelcome physical contact. *See Baca v. Velez*, 114 N.M. 13, 15, 833 P.2d 1194, 1196 (Ct. App. 1992). In prosecuting an assault charge, the State must present some evidence of the victim's actual "belie[f that] he was in danger of receiving an immediate battery." *State v. Mata*, 86 N.M. 548, 550-51, 525 P.2d 908, 910-11 (Ct. App. 1974).

**{16}** Arrendondo argues that because Nicole did not testify during his trial, "there is no way to know, without speculating, if she believed that [Arrendondo] was about to injure her." However, Gloria testified that Nicole was in the house with her when Arrendondo started shooting. Gloria could hear the gunshots. A reasonable jury could infer from this testimony that the shooting was audible to people in Aragon's house, including Nicole.

**{17}** Gloria also testified, without objection, that Nicole said that a bullet passed in front of her and Jasmine, her baby. Gloria told Nicole to hide. It is unclear which of these events happened first. After Gloria told Nicole to hide, Nicole fled to a closet in Gloria's son's

bedroom. From this evidence, a reasonable jury could find that a reasonable person in Nicole's shoes, having heard the gunshots and witnessed a bullet pass next to her and her baby, would have feared for her life. Therefore, the State presented enough evidence to satisfy both the subjective and the objective prongs of this test.

{18} However, the controlling question is whether Arrendondo intended to commit murder or mayhem against Nicole. *See State v. Highfield*, 113 N.M. 606, 609, 830 P.2d 158, 161 (Ct. App. 1992) (providing that an essential element of the crime of assault with the intent to commit a violent felony is the intent to commit the violent felony against such person). We note that the jury was instructed that for it to find Arrendondo guilty of assault with intent to commit a violent felony, in addition to the other elements, it had to find that he intended to kill Nicole or *any other person* or commit murder or mayhem on Nicole *or any other person*. The State correctly argues that the "[j]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 104 N.M. 729, 730, 726 P.2d 883, 884 (Ct. App. 1986).

{19} There was sufficient evidence to find Arrendondo guilty under the instruction as given because there was sufficient evidence that he intended to commit murder against Aragon. Although the State asserts that there was evidence at the trial that Arrendondo knew that Nicole was in the house, our review of the record does not support this assertion. The testimony relied upon by the State established only that Arrendondo had been at the Aragon residence before the shooting, although he never entered their residence. The testimony also established that the Aragons, including Nicole, had been to Arrendondo's residence, although Nicole never entered his residence. We fail to understand how this evidence supports an inference that, at the time in question, Arrendondo knew that Nicole was in the Aragons' house.

{20} However, the instruction, to which Arrendondo did not object either at trial or on appeal, misstated the law regarding assault with intent to commit a violent felony. As a preface to discussing why the instruction is erroneous, it is important to note that a majority of the Court, excluding the author, have opted to raise the issue of the erroneous instruction sua sponte. The majority does so because of this Court's inherent authority to raise an issue sua sponte when it is necessary to protect a party's fundamental rights. *State v. Jade G.*, 2007-NMSC-010, ¶ 24, 141 N.M. 284, 154 P.3d 659.[1] Although as a general rule propositions of law not raised in the trial court should not be raised sua sponte by the appellate court, there are exceptions. One exception is when doing so is necessary to protect

---

[1] I decline to raise the issue sua sponte because of the concern that we may be missing important legal considerations. In this case, it may be that transferred intent can support a conviction of assault with intent to commit a violent felony. *See Culler v. State*, 594 S.E.2d 631, 635 (Ga. 2004). I prefer that an appellate court be sparing in its exercise of authority to raise issues sua sponte. Although perhaps it would be more difficult, the defendant may raise the issue in a habeas corpus proceeding.

a party's fundamental rights. *Id*. We also have the responsibility to question sua sponte a conviction for a nonexistent crime, because otherwise fundamental error would not be corrected. *State v. Johnson*, 103 N.M. 364, 371, 707 P.2d 1174, 1181 (Ct. App. 1985). The question is whether the jury may have convicted Arrendondo of a crime that does not exist because of the way they were instructed. The majority answers this question affirmatively.

**{21}** When reviewing a jury instruction for fundamental error, "we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks and citation omitted). An instruction that, through omission or misstatement, gives the juror an inaccurate rendition of the relevant law, may confuse or misdirect a juror. *See id*. In this case, the jury instruction as it was submitted to the jury misdirected or confused the jury, because it may have allowed the jury to conclude that whether Arrendondo intended to murder Nicole was irrelevant because he shot into the house intending to murder Aragon. Therefore, under the erroneous jury instruction, the jury may have found Arrendondo guilty of assault with intent to commit a violent felony against Nicole without finding that Arrendondo intended to murder Nicole. If the jury found Arrendondo guilty of assaulting Nicole because he had the intent to commit a violent felony against Aragon, but not Nicole, the jury would have found Arrendondo guilty of a crime that does not exist. The majority agrees with the Court of Appeals' holding in *Highfield* that an essential element of the crime of assault with the intent to commit a violent felony is the intent to commit the violent felony against such person. The jury should have been instructed to consider only whether the State proved beyond a reasonable doubt that Arrendondo assaulted Nicole with the intent to commit a violent felony against her. Having failed to do so, the jury may have convicted Arrendondo of a crime that does not exist, and we cannot let such fundamental error go uncorrected. *See State v. Maestas*, 2007-NMSC-001, ¶ 26, 140 N.M. 836, 149 P.3d 933 (a conviction for a nonexistent crime constitutes fundamental error).

**{22}** Although this conviction is reversed, the State is not barred from retrying Arrendondo under this count because his sufficiency of the evidence argument fails under the instruction as given. *State v. Mascareñas*, 2000-NMSC-017, ¶ 31, 129 N.M. 230, 4 P.3d 1221 (providing that retrial following an appeal is not barred if the evidence below was sufficient to support a conviction under the erroneous jury instruction).

### B.     Is There Sufficient Evidence to Support the Convictions for Negligent Child Abuse of Jasmine and Adrian?

**{23}** The State argued that Arrendondo fired at least two gunshots into the home where Jasmine and Adrian, both minors, were situated at the time of the shooting. The jury convicted Arrendondo of negligent child abuse of both Jasmine and Adrian. Arrendondo contends that the State failed to prove beyond a reasonable doubt that he knew of the children's presence in the house, and therefore he could not have had the requisite mens rea to endanger them. To prove negligent child abuse, the State had to prove beyond a reasonable doubt that (1) Arrendondo caused Jasmine and Adrian to be placed in a situation

7

which endangered their lives; (2) Arrendondo acted with reckless disregard and without justification, meaning that Arrendondo "knew or should have known that [his] conduct created a substantial and foreseeable risk" to Jasmine and Adrian and he was wholly indifferent to the consequences of his conduct toward them; (3) Jasmine and Adrian were both under the age of eighteen; and (4) this happened in New Mexico on or about November 22, 2003. UJI 14-604 NMRA; NMSA 1978, § 30-6-1 (1973, as amended through 2001).

{24} The following evidence would support the elements for both counts of negligent child abuse. Regarding the endangerment element, eyewitnesses testified that they observed Arrendondo fire his weapon into the house. Chief Stevens, Sergeant Arthur, and Ms. Babcock testified that the bullets that landed in the house matched those fired from Arrendondo's handgun. This testimony supports a jury finding that Arrendondo shot into the house, thereby placing both Jasmine and Adrian in a situation that endangered their lives. Gloria and Emilio testified that Jasmine was only two or three weeks old at the time of the shooting. Adrian was eleven years old at that time. These facts support the fourth element on both counts, that both children were under the age of eighteen. Finally, there is no dispute as to when the shooting occurred. Thus, the crux of Arrendondo's argument rests upon whether there was sufficient evidence for a jury to reasonably find that Arrendondo acted with a reckless disregard with respect to the children's safety.

{25} The mens rea element requires the State to prove that Arrendondo "knew or should have known that [his] conduct created a substantial and foreseeable risk" to Jasmine and Adrian, a risk which he recklessly disregarded. UJI 14-604. This element may be proven with evidence that the defendant was or should have been aware that the child was present within the zone of danger. *State v. Gonzales*, 2011-NMCA-081, ¶¶ 1, 32, 150 N.M. 494, 263 P.3d 271, *cert. granted on unrelated issue*, 2011-NMCERT-008, ___ N.M. ___, 268 P.3d 514. In *Gonzales*, the Court of Appeals concluded that the State failed to prove negligent child abuse with respect to a drunk driver who, while driving recklessly, hit a car that was occupied by two children. *Id.* ¶¶ 4, 27. The Court of Appeals determined that although the State proved that the defendant had accidentally endangered two children while driving recklessly, this proof was insufficient to support the mens rea element of criminal negligence. *Id.* ¶¶ 15, 27. The Court of Appeals concluded that unless it read Section 30-6-1(D)(1) to require the State to prove that the defendant was aware that the child victims were present in the zone of danger, the statute would create a strict liability crime, contrary to the statutory language requiring a mental state of at least negligence. *Gonzales*, 2011-NMCA-081, ¶¶ 29-31. The Court therefore held that "it is insufficient for the State to prove a substantial and foreseeable risk by simply establishing that the possibility exists that a hypothetical child will be injured thereby . . . even though that child was not known to be endangered at the time." *Id.* ¶ 31. Instead, the Court held that the criminal negligence "mental state requires that Defendant know, or at least should know, that her conduct is endangering a child." *Id.* ¶ 30.

{26} Therefore, the question we must answer is whether the State proved beyond a reasonable doubt that Arrendondo knew or should have known that the child victims were

present in the zone of danger he created. Otherwise, the neglect of the children would be accidental or unknowing rather than negligent, and accidental conduct cannot support a conviction for negligent child abuse. *Id.* ¶ 26.

### 1. There Is Sufficient Evidence to Support a Conviction for Negligent Child Abuse of Jasmine.

**{27}** Regarding Jasmine, there is sufficient evidence to affirm the conviction for negligent child abuse. On the issue of whether Arrendondo acted with reckless disregard of Jasmine's safety, Gloria testified that she told Arrendondo before the shooting that there was a "newborn baby" in the house. This would allow a reasonable jury to have found that Arrendondo knew or should have known that his conduct created a substantial risk to Jasmine, who was approximately three weeks old at the time of the shooting. The jury could have also reasonably found that Arrendondo disregarded that risk by shooting into the house, despite having been informed of a baby's presence in the house. Therefore, the State presented sufficient evidence to support the conviction for negligent child abuse of Jasmine, and we affirm this conviction.

### 2. There Is Not Sufficient Evidence to Uphold the Conviction for Negligent Child Abuse of Adrian Because There Is No Evidence that Arrendondo Was Aware that Adrian Was in the House.

**{28}** Regarding Adrian, the record does not contain evidence from which a jury could have found that Arrendondo "knew or should have known" that Adrian was inside the house. The State did not present any evidence that Arrendondo had been made aware of Adrian's presence, that Adrian was eleven years old, or that he should have known about Adrian's presence inside the house. We have previously reversed convictions for insufficient evidence where, "[f]or the jury to have reached [the conclusions necessary to the verdict, it] had to speculate." *State v. Vigil*, 2010-NMSC-003, ¶ 20, 147 N.M. 537, 226 P.3d 636 (second alteration in original) (internal quotation marks and citation omitted). Consequently, the State failed to provide sufficient evidence to support the conviction for negligent child abuse of Adrian, and we reverse this conviction.

### C. There Is Not Sufficient Evidence to Support the Conviction for Tampering with Evidence Because the State Provided No Proof that Arrendondo Hid or Disposed of His Gun.

**{29}** The State presented evidence that the police could not find the 9 mm handgun that Arrendondo used in the shooting when they searched his house. The jury convicted Arrendondo of tampering with this gun. Arrendondo contends that the evidence is insufficient to support the guilty verdict because the State did not present any evidence that Arrendondo actively hid or disposed of the gun. To support the conviction of tampering with evidence, the State had the burden of proving beyond a reasonable doubt that (1) Arrendondo disposed of or hid "the 9mm handgun or any other gun"; (2) Arrendondo

9

intended to prevent the apprehension, prosecution, or conviction of himself; and (3) this happened in New Mexico on or about November 22, 2003. *See* UJI 14-2241 NMRA; NMSA 1978, § 30-22-5 (2003).

**{30}** The parties agree that the only evidence that Arrendondo tampered with his 9 mm handgun is that the police could not find the gun when they searched Arrendondo's house. The State contends that the simple fact that the police could not find the 9 mm handgun when they searched Arrendondo's house means that "[Arrendondo] undertook the overt act of removing the gun from the scene of the shooting and disposed of it in such a way that it took law enforcement several weeks to find it." The State concedes that "[i]t is not clear exactly how [Arrendondo] disposed of the gun." We conclude that this evidence is insufficient to support a guilty verdict of tampering with evidence.

**{31}** We have previously held that the State must provide some evidence, either direct or circumstantial, that the defendant committed an overt act with respect to the evidence in question with the intent to disrupt the police investigation. *See State v. Silva*, 2008-NMSC-051, ¶¶ 17-19, 144 N.M. 815, 192 P.3d 1192. In *Silva*, the State alleged that the defendant had tampered with the murder weapon because "(1) [the d]efendant had a gun at the scene of the crime; (2) a gun was used to murder [the victim]; (3) the murder weapon was removed from the scene; and (4) the murder weapon was never recovered." *Id.* ¶ 17. We held that "absent both direct evidence of a defendant's specific intent to tamper and evidence of an overt act from which the jury may infer such intent, the evidence cannot support a tampering conviction." *Id.* ¶ 18.

**{32}** In *Silva*, we concluded that the State had failed to meet its burden of proof because the State did not offer evidence "of an overt act on Defendant's part from which the jury could infer [the specific] intent" to disrupt the investigative process. *Id.* ¶ 19. We concluded that "the State effectively asked the jury to speculate that an overt act of . . . hiding [the murder weapon] had taken place, based solely on the fact that such evidence was never found." *Id.* (alteration in original) (internal quotation marks and citation omitted).

**{33}** Here, as in *Silva*, the State provided evidence that Arrendondo took the gun when he left the crime scene, but it offered no evidence that Arrendondo actively hid or disposed of it. Rather, Arrendondo claims that he left his 9 mm handgun at his house and fled the State without it. The police recovered the gun in question from someone else during a traffic stop a few weeks after the shooting. However, the State did not offer any evidence regarding how the person from whom they recovered the gun came to have it in their possession. We are left to speculate whether this person found the gun in an area that might suggest purposeful disposal, or whether he was sold the gun, loaned the gun, or was asked to help hide the gun from the authorities. In summary, just as in *Silva*, the jury was left to speculate that an overt act of hiding or disposing of the weapon took place, based solely on the fact that the gun was not found at either the crime scene or Arrendondo's home when the police searched for it. Therefore, consistent with *Silva*, Arrendondo's conviction for tampering with the gun must be reversed.

**{34}** At trial and on appeal, both parties have focused solely on the 9 mm handgun as the relevant evidence with respect to this conviction. Neither party has raised, and therefore it is not before this Court, whether the tampering conviction would be valid with respect to any other evidence in question. *State v. Ferguson*, 111 N.M. 191, 196, 803 P.2d 676, 681 (Ct. App. 1990) (stating that "[c]ourts should not take it upon themselves to raise, argue, and decide legal issues overlooked by the lawyers"). Because Arrendondo's 9 mm handgun is the only gun proved to be involved in this case, and it fails as sufficient evidence to support a conviction for tampering, we reverse this conviction.

### D.     There Is Sufficient Evidence to Uphold the Conviction for Shooting at a Dwelling.

**{35}** Arrendondo contends that there is insufficient evidence that he shot intentionally into the house, and therefore his conviction for shooting at a dwelling must be reversed. We disagree. To support a conviction for shooting at a dwelling, the State had to prove beyond a reasonable doubt that (1) Arrendondo willfully shot a firearm at a dwelling; (2) Arrendondo knew that the building was a dwelling; (3) Arrendondo was not a law enforcement officer engaged in the lawful performance of duty; and (4) this happened on or about November 22, 2003 in New Mexico. *See* UJI 14-340 NMRA; NMSA 1978, § 30-3-8 (1993).

**{36}** We conclude that the State presented sufficient evidence to support the jury's verdict on this count. Sergeant Arthur testified that the trajectory of the bullets that landed in the house indicates that the shooter was aiming directly at the house. This evidence, combined with the testimony that Arrendondo aimed the gun downward when he shot at Aragon, provided the jury with sufficient evidence to find that Arrendondo intentionally shot at the house.

**{37}** There is also evidence that supports a reasonable inference that Arrendondo not only had reason to shoot into the house, but that he intentionally did so. First, there is testimony that Arrendondo was expressing hostility towards Gloria, whom he knew was inside the house. Second, there is evidence that at least two bullets entered the house. Finally, there is evidence that the trajectory of the bullets that entered the house was different from the trajectory of the bullets that entered Aragon's body. The jury, in considering all of this evidence in the aggregate, could have reasonably inferred that Arrendondo intentionally shot into the house. We conclude that there was sufficient evidence to support Arrendondo's conviction for shooting at a dwelling, and therefore affirm his conviction.

### III.     MR. ARRENDONDO HAS NOT SHOWN THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

**{38}** Arrendondo contends that his counsel was ineffective because she (1) failed to timely investigate both the jacket and the small unidentified fragment, which was key evidence necessary to support his claim of self-defense, and (2) failed to pursue the defense of

voluntary intoxication, which provides a defense to specific-intent crimes such as first-degree murder. "For a successful ineffective assistance of counsel claim, a defendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice." *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289. The record is frequently insufficient to establish whether an action taken by defense counsel was reasonable or if it caused prejudice. *Id*. ¶ 33. Thus, instead of remanding the matter to the trial court, this Court prefers that these claims be brought under habeas corpus proceedings so that the defendant may actually develop the record with respect to defense counsel's actions. *See Duncan v. Kerby*, 115 N.M. 344, 346-47, 851 P.2d 466, 468-69 (1993). For this Court to remand to the trial court on this issue, the defendant must present a prima facie case of ineffective assistance of counsel. *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. Without such prima facie evidence, the Court presumes that defense counsel's performance fell within the range of reasonable representation. *Id.* ¶ 21.

{39}    In this case, Arrendondo has failed to establish a prima facie case of ineffective assistance of counsel with either claim. Regarding the first claim, Arrendondo contends that his counsel was ineffective because she failed to timely investigate the source of the unidentified fragment to establish that it was a bullet from a gun, which would have supported his claim of self-defense. It is unreasonable for counsel not to investigate a significant issue raised by the client. *State v. Hunter*, 2006-NMSC-043, ¶ 14, 140 N.M. 406, 143 P.3d 168. In this case, the record does not contain any evidence that counsel either intentionally or negligently failed to investigate the unidentified fragment in the jacket. The record reflects the fact that defense counsel only became aware of the jacket itself one week before commencement of trial. Therefore, we would have to speculate about the reason for her delay in learning about the jacket's existence.

{40}    We would also have to speculate about the cause of any prejudice to Arrendondo as a result of his counsel's alleged failure to timely investigate the unidentified fragment found in the jacket's lining. Defense counsel was given latitude to argue that the jacket, which was in evidence, was circumstantial evidence that Aragon shot at Arrendondo and Arrendondo shot back in self-defense. The record also suggests that despite Arrendondo's claims to the contrary, Aragon may not have shot at Arrendondo; eyewitnesses testified that Aragon did not have a gun. In addition, the record reveals that during her interview with police, Arrendondo's girlfriend, Erin Gillespie, told Officer Arthur Mike Cruz that Arrendondo had been shot in the back by Aragon. She told police that there was a large amount of blood on the t-shirt Arrendondo was wearing, and that she had taken out the bullet lodged in his back with a butter knife. Officer Cruz testified that the investigation team attempted to locate the bullet, the butter knife, and the bloody t-shirt, but they were unsuccessful in their attempts. Moreover, during the testimony of Officer Cruz, defense counsel objected to the officer's testimony regarding Gillespie's statement on hearsay grounds, informing the trial court that Gillespie's "statement ha[d] been discredited . . . she was lying trying to protect [my client]."

{41}    We note that the jury may have been more likely to credit Arrendondo's theory of self-defense if the unidentified fragment found in Arrendondo's jacket was in fact a bullet

that came from a gun owned by Aragon. Without a more developed record, however, we are unable to determine whether Arrendondo can present evidence to support the theory that there was an ineffective assistance of counsel error resulting in prejudice toward him.

**{42}**     Arrendondo's second claim is that defense counsel was ineffective for not raising the defense of voluntary intoxication, which provides a defense to specific-intent crimes such as first-degree murder. *State v. Hernandez*, 2003-NMCA-131, ¶ 20, 134 N.M. 510, 79 P.3d 1118. The State maintains that defense counsel's decision not to present a voluntary intoxication defense was not error, but rather a rational defense theory, because voluntary intoxication is inconsistent with a self-defense theory, which requires an intent to kill the victim. *See State v. Garcia*, 2011-NMSC-003, ¶ 37, 149 N.M. 185, 246 P.3d 1057 (holding that counsel acts reasonably in not seeking a voluntary intoxication instruction when it could undermine a defendant's credibility with the jury). However, because the record is void of any testimony from defense counsel regarding the reason for her decision, we do not know her motivation, and thus we cannot speculate regarding the reasonableness of that decision.

**{43}**     Moreover, Arrendondo has not established that he was prejudiced by the lack of a voluntary intoxication instruction. Arrendondo testified that he consumed heroin twice during the day before Aragon's murder. However, for a defendant to be entitled to a voluntary intoxication instruction, the defendant must present evidence that (1) he or she consumed intoxicants, (2) he or she was actually intoxicated, and (3) the degree of intoxication interfered with his or her ability to develop the requisite intent to commit the charged crime. *See Garcia*, 2011-NMSC-003, ¶ 35. There is no evidence in the record that Arrendondo was intoxicated to such a degree that he was unable to form the intent necessary to commit murder, and therefore there was no evidence suggesting that he was prejudiced. *See Roybal*, 2002-NMSC-027, ¶ 25 (holding that prejudice requires defendant to show that there was a reasonable probability that, absent the errors, the jury would have reached a different result).

**{44}**     Because we do not have enough evidence to properly address either of these two claims, we affirm the trial court's denial of Arrendondo's motion for a new trial. However, Arrendondo is free to pursue habeas corpus proceedings where he may actually develop the record with respect to these issues. *See Duncan*, 115 N.M. at 346-47, 851 P.2d at 468-69 (discussing that a defendant who raises an ineffective assistance of counsel claim on direct appeal is not precluded from raising such a claim in a habeas proceeding).

**IV.     REVERSAL BASED ON ARRENDONDO'S UNPRESERVED SPEEDY TRIAL CLAIM IS NOT WARRANTED BECAUSE THE DELAY DOES NOT AMOUNT TO FUNDAMENTAL ERROR.**

**{45}**     The grand jury indicted Arrendondo on October 27, 2004, almost a year after the shooting, at which time he was in custody in California. Arrendondo's trial did not occur until October 27, 2008, exactly four years after he was indicted. Arrendondo claims for the first time on appeal that his Sixth Amendment right to a speedy trial was violated by this

13

delay, and that this violation thereby denied him the opportunity to serve his New Mexico and California sentences concurrently.

**{46}** When analyzing a speedy trial violation, the court must review four factors: "(1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant . . . ." *State v. Maddox*, 2008-NMSC-062, ¶ 7, 145 N.M. 242, 195 P.3d 1254 (citation omitted). First, the defendant must show that the length of delay is presumptively prejudicial. *See State v. Garza*, 2009-NMSC-038, ¶¶ 15-22, 146 N.M. 499, 212 P.3d 387 (holding "that a 'presumptively prejudicial' length of delay is simply a triggering mechanism, requiring further inquiry into the *Barker* factors"). In this case, the four-year delay is both presumptively prejudicial and sufficient to trigger examination of the other factors. *Id.* ¶¶ 48-49 (recognizing that even the most complex cases are only given eighteen months before further inquiry into a speedy trial violation claim is warranted).

**{47}** Regarding the second factor, Arrendondo stipulated that the delay in bringing the case to trial was not the State's fault. Although defense counsel stated on the record that she was not waiving her client's right to a speedy trial, Arrendondo's stipulation still controls. *See State v. Collins*, 2007-NMCA-106, ¶ 27, 142 N.M. 419, 166 P.3d 480 (allowing a party "to invite error and to subsequently complain about that very error would subvert the orderly and equitable administration of justice" (internal quotation marks and citation omitted)). Because Arrendondo stipulated below that the delay in bringing the case to trial was not the State's fault, he is estopped from now claiming that "[t]he majority of [the] delay is attributable solely to the state."

**{48}** The third factor acts as a preservation mechanism by requiring a defendant to assert his right to a speedy trial throughout the process. The only time that Arrendondo asserted his right to a speedy trial was in the standard demand filed with the trial court when defense counsel entered her appearance. Arrendondo never raised the issue again. He never filed a motion to dismiss due to a speedy trial violation. He never insisted on an early trial date so that, if he were found guilty, he could pursue serving any sentence imposed in New Mexico concurrent with his sentence in California. Indeed, we have already noted the four continuances in which Arrendondo asked the trial court to continue trial settings. Therefore, the trial court never had an opportunity to make a ruling on the issue, and it was not preserved for appellate review.

**{49}** Given the history of this case, Arrendondo's stipulation, his failure to assert his right to a speedy trial, and his failure to preserve the issue in this case, we do not find any fundamental error with respect to the speedy trial claim. *See State v. Rojo*, 1999-NMSC-001, ¶ 53, 126 N.M. 438, 971 P.2d 829 ("nothing in the record suggests such a striking violation of the constitutional right to a speedy trial that it would be appropriate to consider that issue for the first time on appeal" (internal quotation marks and citation omitted)); *see also* Rule 12-216(B)(2) NMRA (an appellate court, in its discretion, may consider questions involving fundamental error).

## V.  CONCLUSION

**{50}**   Because the State failed to provide sufficient evidence to support Arrendondo's conviction for negligent child abuse of Adrian and his conviction for tampering with evidence, we reverse these two convictions.  We reverse his conviction for assault with intent to commit a felony against Nicole and remand for a new trial consistent with this opinion.  We affirm Arrendondo's remaining convictions. With respect to the convictions that are affirmed, we remand to the trial court to amend the judgment and sentence consistent with this opinion.

**{51}   IT IS SO ORDERED.**

 

 

**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

 

**PETRA JIMENEZ MAES, Chief Justice**

 

**PATRICIO M. SERNA, Justice**

 

**RICHARD C. BOSSON, Justice**

 

**CHARLES W. DANIELS, Justice**

**Topic Index for _State v. Arrendondo_, Docket No. 31,934**

| **AE** | **APPEAL AND ERROR** |
| AE-FE | Fundamental Error |
| AE-PA | Preservation of Issues for Appeal |
| AE-SR | Standard of Review |
| AE-SS | Sua Sponte Issue on Appeal |
| AE-SB | Substantial or Sufficient Evidence |
| | |
| **AT** | **ATTORNEYS** |
| AT-EA | Effective Assistance of Counsel |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-ST | Speedy Trial |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-AS | Assault |

| CL-CN | Child Abuse and Neglect |
|-------|-------------------------|
| CA-JI | Jury Instructions |
| CL-IX | Intoxication |
| CL-MU | Murder |
| CL-SD | Self-defense |
| CL-ST | Shooting Offences |
| CL-SI | Specific Intent |
| CL-TE | Tampering with Evidence |

| **CA** | **CRIMINAL PROCEDURE** |
|--------|------------------------|
| CA-CU | Continuance |
| CA-PJ | Prejudice |
| CA-SU | Stipulations |
| CA-SE | Substantial or Sufficient Evidence |

| **EV** | **EVIDENCE** |
|--------|--------------|
| EV-AE | Admissibility of Evidence |
| EV-AT | Authentication of Evidence |