This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **NO. 31,664**

**ABRAN NELSON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF GUADALUPE COUNTY**
**Matthew J. Sandoval, District Judge**

Gary K. King, Attorney General
Olga Serafimova, Assistant Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Chief Judge.**

{1}    Abran Nelson (Defendant) appeals his conviction for one count of assault with intent to commit a violent felony (murder). *See* NMSA 1978, § 30-3-3 (1977). He contends, among other issues, that there was insufficient evidence to support his conviction and that the jury instructions were so deficient as to constitute reversible, fundamental error. We agree with Defendant that the evidence was insufficient to establish that he intended to kill Rachel Hern. Therefore, we reverse Defendant's conviction without considering his contentions regarding the erroneous jury instructions, or any other issues he raises in the alternative.

{2}    The State's only response is a short statement indicating that, after reviewing the record and researching the issues raised by Defendant, it "is unable to present an argument in support of affirming Defendant's convictions on appeal." In light of the State's response, we consider Defendant's issues solely on the basis of his brief-in-chief. *See* Rule 12-312(B) NMRA (stating that "[i]f an appellee fails to file an answer brief as provided by these rules, the cause may be submitted upon the brief of appellant, and appellee may not thereafter be heard, except by permission of the appellate court"). However, we are not bound by the State's concessions, and "we

conduct our own analysis." *State v. Caldwell*, 2008-NMCA-049, ¶ 8, 143 N.M. 792, 182 P.3d 775.

## I.    BACKGROUND

**{3}**    Given the State's failure to rebut or contest any of the facts as set forth in Defendant's brief-in-chief, we rely primarily on his factual recitation in providing the background necessary to our disposition of this case. *State v. Hernandez*, 116 N.M. 562, 563, 865 P.2d 1206, 1207 (Ct. App. 1993) (recognizing that unchallenged facts appearing in the docketing statement will be accepted as the facts of the case).

**{4}**    Defendant was charged with assault with intent to commit a violent felony based upon his alleged threats to the victim, Rachel Hern. Defendant's ex-girlfriend, Jessica, was romantically involved with Rachel's son, Adrian Hern. Jessica lived with Rachel and Adrian. Defendant was upset that Jessica was in a relationship with Adrian and living with Adrian and Rachel.

**{5}**    On February 15, 2010, Defendant and Adrian had a fist-fight, and the next morning, February 16, 2010, Defendant came to Rachel's house looking for Jessica. Rachel told Defendant that neither Jessica nor Adrian were at home and invited Defendant into the house. Defendant was upset and told Rachel that he was going to kill Adrian and himself. Defendant mentioned that he had a gun in his car, which was at the far end of the driveway on the other side of a fence.

{6}     Rachel testified that none of Defendant's threats were directed at her. She testified that she was afraid of Defendant because he seemed angry, but she also testified that she invited him to return later that day.

{7}     Later, the same day after returning from errands, Rachel checked her post office box where she received mail. She then checked the mailbox located on the highway outside the home she shared with Adrian. In that mailbox, Rachel found a letter. The letter had no postage. It was addressed to "HERN." It contained cut-out phrases, including: "Don't be afraid to [d]ie[,] you're next[,] and I [h]ate you." There was evidence that Defendant had previously written letters to Jessica and Adrian that were addressed to this same mailbox on the highway, but with proper postage.

{8}     At trial, Rachel testified that she was stunned and afraid when she received the letter and believed it was directed at her. She contacted the police and brought the letter to the station with her. Defendant was subsequently charged in this case.

**II.     DISCUSSION**

**Sufficiency of the Evidence**

{9}     Defendant claims that there was insufficient evidence to support his conviction for assault with intent to commit a violent felony (murder). In analyzing a sufficiency challenge on appeal, we view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all inferences in favor of the verdict. *State v.*

*Apodaca*, 118 N.M. 762, 765-66, 887 P.2d 756, 759-60 (1994). We do not weigh the evidence or substitute our judgment for that of the fact finder. *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789, *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683. Moreover, this Court cannot consider the merit of evidence that may have supported a different result. *State v. Kersey*, 120 N.M. 517, 520, 903 P.2d 828, 831 (1995).

{10} The crime of assault with intent to commit a violent felony is defined as "[a]ssault . . . with intent to kill or commit any murder, mayhem, criminal sexual penetration in the first, second[,] or third degree, robbery or burglary." Section 30-3-3. In this case, the State's theory was that Defendant intended to kill Rachel. "[T]he controlling question is whether [the defendant] intended to commit murder . . . against [the alleged victim]." *State v. Arrendondo*, 2012-NMSC-013, ¶ 18, 278 P.3d 517; *see State v. Highfield*, 113 N.M. 606, 609, 830 P.2d 158, 161 (Ct. App. 1992) (stating that an essential element of the crime of assault with intent to commit a violent felony (murder) is the intent to murder the person assaulted). Moreover, it is essential that Defendant intended to kill the person assaulted—Rachel—not someone else, such as Adrian. *See Arrendondo*, 2012-NMSC-013, ¶ 21.

{11} Defendant claims that the evidence shows that (1) all of Defendant's threats were targeted at Adrian, not Rachel; (2) none of Defendant's actions could be

considered sufficiently threatening to constitute assault with intent to commit a violent felony (murder) with Rachel as the victim; and (3) there was not enough evidence to establish beyond a reasonable doubt that Defendant intended to murder Rachel. *See* § 30-3-3. We agree.

{12} Initially, we note that, even though Defendant makes a persuasive argument that the jury instructions were so defective as to constitute fundamental reversible error, we consider the instructions given to the jury to determine if there is sufficient evidence to support his conviction. *Arrendondo*, 2012-NMSC-013, ¶¶ 18-22 (recognizing that the jury received erroneous instructions on the elements of assault with intent to commit a violent felony, but for purposes of considering the defendant's sufficiency challenge, only considering whether the evidence was sufficient based upon the instructions given to the jury).

{13} As to the essential elements of the crime of assault with intent to commit a violent felony, the jury was instructed that the State must prove:

    1)    [D]efendant assaulted Rachel[.]

    2)    When [D]efendant assaulted Rachel . . .[,] it was with the intent to kill Rachel[.]

    3)    A reasonable person in the same circumstances as Rachel Hern would have had the same belief[.]

{14}   In instructing the jury on the crime of assault with intent to commit a violent felony, the jury must also be instructed on the essential elements of the underlying violent felony. *See* UJI 14-313 NMRA, Use Note 3 (stating that "[t]he essential elements of the felony or felonies must also be given immediately following this instruction"). In this case, the underlying felony was willful and deliberate murder, and the jury was instructed that the State had to prove beyond a reasonable doubt that:

1)    [D]efendant threatened to kill Rachel[.]

2)    The killing[,] if it took place[,] would have been with the deliberate intention to take away the life of Rachel[.]

*Cf.* UJI 14-201 NMRA (setting forth the essential elements for willful and deliberate murder). The instruction varied from the uniform jury instruction for this crime because it failed to include language defining what is meant by intent to kill. *See id.* (defining what is meant by "deliberate intention" for willful and deliberate murder).

{15}   Finally, the uniform jury instructions require the jury to be instructed that Defendant committed the requisite underlying assault by finding that he attempted to commit a battery, or that Rachel was in fear that Defendant was about "to intrude on [her] bodily integrity or personal safety" by committing a battery. *See* UJI 14-313. However, in this case, the jury was instructed as to the meaning of assault in an instruction that merely quotes the language of NMSA 1978, Section 30-3-1 (1963), defining assault as:

A. [A]n attempt to commit a battery upon the person of another[.]

B. [A]ny unlawful act, threat[,] or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery[.]

C. [T]he use of insulting language toward another impugning his honor, delicacy[,] or reputation.

{16} There is no evidence that Defendant ever tried to touch or apply force to Rachel. There is no evidence that Rachel believed she was going to receive an immediate battery from Defendant. Moreover, at the time of Defendant's face-to-face interaction with Rachel, there was no evidence that he even threatened her. Defendant did not brandish a weapon, he made no moves toward her, and Rachel acknowledged that his threats concerned Adrian. Rachel admitted that she did not even call the police after Defendant left her home. Instead, Rachel invited Defendant to come back to her house later in the day. As to the threats in the letter, Defendant was not even present when Rachel took the letter from the mailbox. It was directed to "HERN," and it was placed in a mailbox shared by Rachel and Adrian.

{17} Based upon the foregoing, we are not convinced that Defendant's face-to-face encounter with Rachel, coupled with the threatening language in the letter, is sufficient for the jury to conclude, beyond a reasonable doubt, that Defendant sufficiently assaulted, much less intended to kill, Rachel. *Cf. Highfield*, 113 N.M. at 608, 830 P.2d at 160 (recognizing that "Section 30-3-3 is directed toward conduct

8

which is motivated by an intention to effect another's death"). Instead, Defendant's threats directed toward Adrian during his face-to-face interaction with Rachel earlier in the day support an interpretation of the letter as containing threats again directed toward Adrian, not Rachel, despite Rachel's testimony as to her belief that the letter was directed at her.

{18} Given the lack of evidence that Defendant ever touched or attempted to touch Rachel, and the lack of evidence that he ever directly threatened her with bodily harm, the jury was required to speculate as to whether Defendant intended to kill Rachel when he made these statements. "This it may not do." *State v. Malouff*, 81 N.M. 619, 621, 471 P.2d 189, 191 (Ct. App. 1970) (reversing the defendant's conviction for lack of sufficient evidence because the jury would have had to engage in speculation in order to convict and observing that, although this Court reviews the evidence in the light most favorable to conviction, that standard of review "does not replace the requirements of proof").

{19} Based upon the foregoing and noting the absence of argument to the contrary by the State, we reverse Defendant's conviction for assault with intent to commit a violent felony (murder) because there was insufficient evidence that he intended to kill Rachel. Based on our reversal, we do not address the remaining issues raised by Defendant in his brief-in-chief.

9

## III. CONCLUSION

{20}   Based upon the foregoing, we reverse Defendant's conviction for assault with intent to commit a violent felony (murder) for lack of sufficient evidence and remand to the district court for dismissal of the charge and the discharge of Defendant.

{21}   **IT IS SO ORDERED.**


_____
**RODERICK T. KENNEDY, Chief Judge**


**WE CONCUR:**


_____
**MICHAEL E. VIGIL, Judge**


_____
**J. MILES HANISEE, Judge**