This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38757**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MICHAEL J. ROMERO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Abigail Aragon, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Charles D. Agoos, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}**     Defendant Michael Romero appeals his convictions for second-degree murder, pursuant to NMSA 1978, Section 30-2-1(B) (1994), and tampering with evidence, pursuant to NMSA 1978, Section 30-22-5 (2003). Defendant argues (1) it was fundamental error to impanel a biased jury; (2) he received ineffective assistance of counsel; and (3) the evidence was insufficient to support his conviction for tampering with evidence. We hold insufficient evidence exists to support Defendant's conviction for tampering with evidence but otherwise affirm.

**BACKGROUND**

**{2}** This appeal arises out of a shooting. Defendant's son was asleep next to Victim in the family's home when a gunshot awoke him. Defendant's son saw that Victim had been shot, and saw Defendant in the room holding a shotgun. The shotgun was never recovered by law enforcement.

**{3}** At the conclusion of Defendant's trial, the jury convicted Defendant of second-degree murder and tampering with evidence. Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we reserve further discussion of specific facts where necessary to our analysis.

**DISCUSSION**

**I.    Impaneling Jurors 11 and 14 Did Not Deprive Defendant of His Right to a Fair and Impartial Jury**

**{4}** Defendant argues the district court deprived him of his right to a fair and impartial jury by impaneling two biased jurors, Jurors 11 and 14.[1] The State notes, and Defendant does not dispute, that he failed to question either juror about the biases he alleges or object to their participation. Our own review of the record also leads us to conclude that Defendant waived any objection to these jurors' participation in the trial. *See State v. Sanchez*, 1995-NMSC-053, ¶ 9, 120 N.M. 247, 901 P.2d 178 (stating that, notwithstanding an accused's right to a fair and impartial trial, a defendant "may waive objection for possible juror bias by failing to discover the possible bias"). Nevertheless, we review Defendant's claim for fundamental error. *See State v. Singleton*, 2001-NMCA-054, ¶¶ 16, 19, 130 N.M. 583, 28 P.3d 1124 (reviewing the defendant's waived constitutional claim for fundamental error); Rule 12-321(B) NMRA.

**{5}** During voir dire, Juror 11 stated he had known one of the law enforcement witnesses for "twenty plus years" and worked alongside this witness in a local softball program as one of her assistant coaches. When asked if he could set aside that relationship and make a decision based on the evidence, Juror 11 responded, "That's tough. . . I do socialize with her. I do know her on a personal basis." The State then asked Juror 11 whether, if he were to vote not guilty, it would be difficult to face the witness, to which he responded, "It can be. It can compromise the relationship." During the defense's voir dire, defense counsel acknowledged that several members of the jury pool members had disclosed they knew witnesses, but did not specifically question Juror 11 about his relationship with the law enforcement witness or about any possible bias based on that relationship. During the jury selection conference, defense counsel raised no objection and accepted Juror 11.

---

[1]Defendant argues in a footnote that Juror 23 should also have been excused for cause, and that Juror 9's voir dire responses were "problematic[.]" We decline to address these arguments because they are undeveloped. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (explaining that appellate courts are under no obligation to review unclear or undeveloped arguments).

**{6}**     On the second morning of trial, another juror, Juror 14, informed the district court in a note that a family member had picked up Victim's children from school to bring them to trial, and that the juror did not want his family to "be in cross hairs of family and the case." After disclosing the note to the parties and observing that it did not appear that Juror 14 had discussed the case with his family the district court stated that it did not believe the note provided sufficient cause to excuse the juror at that time. Defense counsel agreed with the court and there was no further discussion about this juror.

**{7}**     While it may have been preferable to conduct individual voir dire of Jurors 11 and 14, we conclude that the district court did not fundamentally err in not doing so. Our Supreme Court's decision in *Sanchez*, 1995-NMSC-053, guides our conclusion. In *Sanchez*, after the jury had begun deliberating, defense counsel learned that the district attorney's office employed the sister of one of the jurors as a victim advocate. *Id.* ¶ 8. She also sat with the victim's family at trial. *Id.* The defendants moved to replace the juror with an alternate or for a mistrial, which the district court denied. *Id.* Our Supreme Court concluded that the district court did not abuse its discretion, determining that the defendants had waived their objection to the juror's participation. *Id.* ¶¶ 11, 16. The Court reasoned that the juror had revealed his sister's employment in his juror questionnaire and during voir dire, yet defense counsel had failed to inquire further into the matter. *Id.* ¶¶ 3, 11.

**{8}**     Despite the defendants' waiver, the Court acknowledged that juror bias can be implied in "extreme situations[.]" *Id.* ¶ 13 (internal quotation marks and citation omitted). The Court, however, concluded that the facts "[did] not justify that implication." *Id.* ¶ 14. The Court also noted that, "other than their assertion that the juror's relationship to her sister constituted bias, [the defendants] presented no other evidence that the juror was unable to perform her duties and that [the defendants] were prejudiced as a result." *Id.* ¶ 16.

**{9}**     Our case presents circumstances similar to those in *Sanchez*. Juror 11 indicated during voir dire that he knew one of the State's law enforcement witnesses, yet defense counsel failed to inquire further. Defendant argues that the district court should have excused Juror 11 after he "unequivocally" stated that his relationship with the witness would influence his verdict. We do not construe Juror 11's statements in the same way as Defendant; instead we perceive the comments to be ambiguous. Juror 11's comments could be interpreted as acknowledging that returning a not guilty verdict could harm his relationship with the witness in the future, or merely that the State's question was a "tough" one to answer as he thought about it—rather than an indication of unwillingness or inability to decide the case based on the evidence. Defense counsel did not follow up with further inquiry that might have resulted in more clarity. *See State v. Dobbs*, 1983-NMCA-033, ¶ 56, 100 N.M. 60, 665 P.2d 1151 ("If there was a genuine concern about any of [the] jurors, then an effort should have been made to elicit more information than appears in this record."), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. Based on our review, Defendant has not satisfied his burden of showing that Juror 11 was "unwilling or unable to decide the case based on the evidence adduced at trial and the instructions given by the

[district] court[.]" *State v. Rackley*, 2000-NMCA-027, ¶ 11, 128 N.M. 761, 998 P.2d 1212. Neither do Juror 11's comments, which focused on his social relationship with the witness, indicate the type of relationship that could justify a finding of implied bias. *See Sanchez*, 1995-NMSC-053, ¶ 13 (describing examples of implied bias to include "a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction" (emphasis, internal quotation marks, and citations omitted)).

**{10}**    Defendant cites *State v. Mann*, 2002-NMSC-001, ¶ 25, 131 N.M. 459, 39 P.3d 124, for the proposition that "[i]f a juror is biased, then the defendant, by definition, suffers prejudice." Although Defendant notes that Juror 11 was the jury foreman, the record is insufficient to allow us to conclude that Juror 11's comments during voir dire "unfairly affected the jury's deliberative process and resulted in an unfair jury." *Id.* ¶ 20. We see nothing in Juror 11's comments that conveyed prejudgment of Defendant's guilt. Similarly, the record is insufficient to demonstrate inferred prejudice. *Cf. State v. Quintana*, 2009-NMCA-115, ¶ 15, 147 N.M. 169, 218 P.3d 87 (inferring prejudice where a majority of the jury had knowledge of another criminal charge of the defendant). Finally, absent more evidence from the record, we assume Juror 11 obeyed the district court's instruction to arrive at a verdict according to the evidence and the law. *See State v. Gardner*, 2003-NMCA-107, ¶ 12, 134 N.M. 294, 76 P.3d 47 (recognizing the presumption that the jury obeys its instructions). Accordingly, we conclude Defendant has not carried his burden of "establish[ing] that the jury was not fair and impartial" based on Juror 11's statements during voir dire. *State v. Gallegos*, 2009-NMSC-017, ¶ 22, 146 N.M. 88, 206 P.3d 993.

**{11}**    Defendant next argues Juror 11's statements during voir dire were presumptively prejudicial just like those of a juror in *Fuson v. State*, 1987-NMSC-034, ¶ 3, 105 N.M. 632, 735 P.2d 1138. In *Fuson*, our Supreme Court presumed prejudice to the defendant because he was forced to use a preemptory challenge on a juror who knew "about half" of the witnesses and as a result stated that the juror might not be able to be impartial, and consequently the defendant exhausted his preemptory challenges before jury selection was complete. *Id.* ¶¶ 3-4, 10-11 (internal quotation marks omitted). The facts here, however, are inapposite to *Fuson*. As previously noted, Defendant raised no objection to Juror 11's participation, and failed to exercise a peremptory challenge to Juror 11 despite having three remaining. Based on the foregoing, we do not presume prejudice.

**{12}**    Finally, Defendant argues that when a prospective juror expresses bias due to a personal relationship and is not rehabilitated, the juror must be excused for cause, citing *Quintana*, 2009-NMCA-115, ¶ 19. However, having concluded that the statements at issue did not establish bias, we need not address Defendant's argument regarding any failure to rehabilitate this juror.

**{13}**    With respect to Juror 14, Defendant contends that the district court erred by failing to excuse or conduct individualized voir dire of Juror 14 after disclosing the

contents of the juror's note to the parties. However, defense counsel did not follow up with further inquiry and instead affirmatively stated that the note did not provide sufficient cause to excuse the juror. This amounted to a waiver of any objection Defendant may have had. "A defendant cannot be permitted to escape the consequences of his earlier knowledge of possible juror bias or to reverse his previous position simply because he gambled and lost." *Sanchez*, 1995-NMSC-053, ¶ 12 (alteration, internal quotation marks, and citation omitted). Although it might have been appropriate for the district court to further question Juror 14 about the note, it was not fundamental error to fail to do so. Juror 14's note did not state he was biased or that he felt unable to be fair. *See Gardner*, 2003-NMCA-107, ¶ 12 (noting "that [the] inquiry into potential jury bias focuses on [the] presence or absence of evidence demonstrating that [the juror] was unwilling or unable to decide the case based on the evidence" (internal quotation marks and citation omitted)).

**{14}** In sum, we cannot say the facts of this case demonstrate "exceptional circumstances" when guilt is so doubtful that it would "shock the conscience to allow the conviction to stand[.]" *State v. Aguilar*, 1994-NMSC-046, ¶ 21, 117 N.M. 501, 873 P.2d 247 (internal quotation marks and citation omitted). Accordingly, we conclude that the district court did not commit fundamental error.

## II.     Defendant Has Not Presented a Prima Facie Case of Ineffective Assistance of Counsel

**{15}** Defendant next argues that he received ineffective assistance of counsel when his trial counsel failed to move to excuse jurors 11 and 14. Because Defendant has not presented a prima facie case for ineffective assistance of counsel, we conclude there is no basis for reversal.

**{16}** "We review claims of ineffective assistance of counsel de novo." *State v. Cordova*, 2014-NMCA-081, ¶ 6, 331 P.3d 980. "For a successful ineffective assistance of counsel claim, a defendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice." *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289. "The record [on direct appeal] is frequently insufficient to establish whether an action taken by defense counsel was reasonable or if it caused prejudice." *State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517. Therefore, our Supreme Court has expressed a preference that "these claims be brought under habeas corpus proceedings so that the defendant may actually develop the record with respect to defense counsel's actions." *Id.* We conclude that course of action to be preferable to our attempting to resolve Defendant's claim of ineffective assistance on direct appeal and a record that is less than complete.

## III.     The Evidence Is Insufficient to Sustain Defendant's Conviction for Tampering With Evidence

**{17}** Defendant argues the State presented insufficient evidence to support his conviction for tampering with evidence. At trial, the State presented evidence Defendant

possessed a shotgun and used that shotgun to shoot Victim. A witness told Officer Elias Rael that, after the shooting, he saw Defendant trying "[to get] into the little shop [near the house where the shooting occurred] and then . . . had seen [Defendant] walking still armed with the shotgun going towards the bigger shop[.]" Officer Rael testified that law enforcement did not find Defendant at the scene of the shooting and that Defendant might have fled. Defendant was later arrested in a different city and the shotgun was never recovered.

**{18}** Defendant argues that he cannot be convicted of tampering simply because the shotgun used in the commission of the crime could not be found. Further, Defendant contends his attempt to enter the little shop and then walking towards the bigger shop with the gun do not qualify as overt acts of tampering and that the jury would have had to impermissibly speculate that Defendant engaged in some unspecified overt act of tampering to sustain his conviction. The State argues that the jury could reasonably infer Defendant hid the weapon with the intent to prevent his apprehension from witness testimony that Defendant removed the weapon from the home immediately after the murder and walked toward the shops. We agree with Defendant.

**{19}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Riley*, 2010-NMSC-005, ¶ 12, 147 N.M. 557, 226 P.3d 656 (internal quotation marks and citation omitted), *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, ¶ 54, 306 P.3d 426. The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "The question before us as a reviewing [c]ourt is not whether we would have had a reasonable doubt [about guilt] but whether it would have been impermissibly unreasonable for a jury to have concluded otherwise." *State v. Rudolfo*, 2008-NMSC-036, ¶ 29, 144 N.M. 305, 187 P.3d 170. "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883.

**{20}** The jury in this case was instructed, in relevant part, that to find Defendant guilty of tampering with evidence, it must find beyond a reasonable doubt that he (1) "destroyed, changed, hid, or placed the shotgun rifle; [and (2) b]y doing so, [D]efendant intended to prevent the apprehension, prosecution or conviction of [Defendant] for the crime of murder[.]" *See* UJI 14-2241 NMRA; *accord* § 30-22-5(A).

**{21}** "When there is no other evidence of the specific intent . . . to disrupt the police investigation, intent is often inferred from an overt act of the defendant." *State v. Duran*, 2006-NMSC-035, ¶ 14, 140 N.M. 94, 140 P.3d 515. But where there is no direct evidence of an intent to undermine law enforcement activities, and no overt act permitting an inference of such intent, "the evidence cannot support a tampering conviction." *State v. Silva*, 2008-NMSC-051, ¶ 18, 144 N.M. 815, 192 P.3d 1192, *holding modified by State v. Guerra*, 2012-NMSC-027, ¶ 18, 284 P.3d 1076.

**{22}** In the context of tampering cases involving guns that were never recovered, our Supreme Court has noted that precedent "requires that evidence showing that a defendant had a gun and used that gun to commit a crime, combined with a showing that the gun was then removed from the scene and never recovered, is insufficient to show that the defendant had the intent required by [the tampering with evidence statute.]" *State v. Carrillo*, 2017-NMSC-023, ¶ 47, 399 P.3d 367 (internal quotation marks and citation omitted), *holding modified by Guerra*, 2012-NMSC-027, ¶¶ 12-16. Similarly, in *Arrendondo*, our Supreme Court concluded that evidence was insufficient to support a tampering conviction where "the [s]tate provided evidence that [the defendant] took the gun when he left the crime scene, but it offered no evidence that [the defendant] actively hid or disposed of it." 2012-NMSC-013, ¶ 33.

**{23}** By contrast, we have held that evidence was sufficient to support a tampering conviction for a knife that was never recovered where the defendant described having thrown the knife from his vehicle as he departed the scene of the stabbing. *See State v. Sanchez*, 2015-NMCA-077, ¶¶ 2, 19, 355 P.3d 51. And in *State v. Torrez*, our Supreme Court concluded the defendant's testimony that "immediately after the shooting, he took most of the guns and put them behind his refrigerator[,]" . . . . "[a]lthough perhaps thin[,]" supported the conclusion that tampering with evidence was proven beyond a reasonable doubt. 2013-NMSC-034, ¶ 44, 305 P.3d 944.

**{24}** Here, the State has provided nothing more than evidence showing that Defendant had a shotgun and used that shotgun to commit a crime, combined with evidence that the shotgun was never found after Defendant took the shotgun from the scene. More specifically, the State's evidence—testimony that a witness saw Defendant walking still armed with the shotgun trying to get into the smaller shop then going towards the bigger shop—failed to establish that Defendant actively hid or disposed of the shotgun.

**{25}** The State contends the jury was not required to speculate that an overt act of hiding the murder weapon had taken place, because, the State contends, there was evidence of an overt act—Defendant's act of removing the shotgun from the house immediately after the murder, trying to get into the smaller shop and then approaching the larger one while still armed. Therefore, the conviction was not based solely on the fact that the shotgun was never found.

**{26}** We acknowledge that unlike *Silva*, the State presented evidence linking the shotgun to Defendant after the shooting and before fleeing the crime scene in a location other than where the shooting occurred. Nonetheless, we conclude that this evidence relied on by the State "asked the jury to speculate that an overt act of hiding the murder weapon" in the shop had taken place*. See Silva*, 2008-NMSC-051, ¶ 19 (omission, alteration, internal quotation marks, and citation omitted); *see also Arrendondo*, 2012-NMSC-013, ¶ 33 (stating that merely providing evidence that the defendant took the gun from the scene but providing no evidence that he actively hid or disposed of it is insufficient evidence of tampering). Accordingly, we determine the State's evidence falls short of "evidence of an overt act from which the jury may infer . . . intent to tamper[.]"

*Silva*, 2008-NMSC-051, ¶ 18, and conclude that the evidence was insufficient to support Defendant's conviction for tampering with evidence.

**CONCLUSION**

**{27}** Based on the foregoing, we reverse and remand with instructions to vacate Defendant's conviction for tampering with evidence. We otherwise affirm.

**{28}    IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JACQUELINE R. MEDINA, Judge**